## Stephens and Another *v.* Evans' Administratrix.

|    |    |
|----|----|
| 30 | 39 |
| 134 | 425 |
| 30 | 39 |
| 143 | 272 |

**WILL.**—*Contingent Remainder.*—*Executory Devise.*—Devise to trustees in trust for C. and his family during his life, and, if his wife should survive him, for his wife and his children surviving him, during her widowhood; upon the death of C. and his wife, or his death and the marriage of his widow, thereupon, instantly, and thenceforth the real estate devised to descend, go to, and become the absolute property of the children of C. living at the happening of such contingency, and such others of his children as might thereafter be born, if any, and the children of any deceased child of his; if any child of C., "now in existence, or hereafter born," should die a minor and without heirs of his or her body begotten, or die after majority, intestate and without such heirs, the estate or interest of such child to go to, vest in, and become the property of his or her brothers and sisters and their descendants, and for want of such brothers or sisters, or their descendants, such estate or interest to go to, vest in, and become the property of the cousins of such deceased child, children of J., and their descendants.

*Held,* that the children of C. took a contingent remainder, and that the limitation to the cousins was void under the rule against perpetuities.

SAME.—*Remainders.—Intention of Testator.*—In cases of doubtful construction, the law leans towards vested remainders, but the intention of a testator, where it can be ascertained, governs, whether it result in vested or contingent remainders.

SAME.—*Perpetuities.—Rule Against.*—If, by any possibility, the vesting in possession of an estate limited over by way of executory devise may be postponed beyond the period of a life or lives in being and twenty-one years and nine months, the limitation is void; and the rule runs from the death of the testator.

SAME.—*Statute.*—The *proviso* in the eleventh section of the act regulating descents, distribution and dower, of February. 17th, 1838, did not change the rule against perpetuities.

VENDOR AND PURCHASER.—*Consideration.—Covenant.*—A. and B. sold, and, by deed with full covenants, conveyed, to C. certain real estate, A. having only a life estate therein, and B. only one undivided half in fee, subject to such life estate.

*Held,* in a suit against C., in possession under the deed, on his note given for a part of the purchase money, that this partial want of title in the vendors was no failure of the consideration of the note, or breach of the covenants in the deed entitling C. to recover back any part of the purchase money.

APPEAL from the Vanderburgh Circuit Court.

GREGORY, J.—The administratrix of Dewitt C. Evans sued Silas and Henry C. Stephens on a promissory note. The defendants answered in two paragraphs, setting up substantially the same facts. Demurrers were sustained to the answer, and this presents the questions involved.

The consideration of the note was the sale and conveyance of a tract of land in fee by deed with full covenants, from Saleta Evans and Dewitt C. Evans to Henry C. Stephens.

Robert M. Evans, at the time of his death, in February, 1843, was the owner in fee of the land. Saleta Evans is the widow, and Dewitt C. Evans was the son of Camilas Evans, a son of Robert M. Evans. Henry C. Stephens is a son of Juliana Stephens, a daughter of Robert M. Evans. The title to the land depends upon the construction and effect to be given to four articles of the will of Robert M. Evans, numbered second, third, fourth, and twelfth. The

land in question is embraced in the third. These articles are as follows:—

*Second.* "Having heretofore conveyed to my daughter, Juliana Stephens, lot number five, in the original plan of the town of Evansville aforesaid, on which she, with her husband and family, and myself now reside, to have, possess and enjoy the same during her natural life, and remainder to her children in fee, after her death; as an equivalent therefor, I do give and devise to my trusty friends, Silas Stephens, John Shanklin, and Marcus Sherwood, all of the town of Evansville aforesaid, in trust, to and for the uses and purposes hereinafter declared and specified, all that block or piece of ground lying within the bounds of the town of Evansville aforesaid, containing something more than two acres, and bounded on the northwest side by Main street, as extended in and through the eastern enlargement of said town; on the northeast side by Sixth street; on the southeast by Locust street, and on the southwest by Fifth street and the canal, being the same premises known as my old homestead, on which my son Camilas now resides.

"To have and to hold the said block of ground, with its appurtenances, unto the said Silas Stephens, John Shanklin and Marcus Sherwood, and the survivor and survivors of them, and the successor and successors of them, or any or either of them, in trust, to and for the uses and purposes following, that is to say: that the said Stephens, Shanklin and Sherwood, and the survivor or survivors of them, or of any or either of them, and their successors as my trustees (whom I shall henceforth style my trustees), shall, in their discretion, either permit my son Camilas C. Evans and his family, during his life, to reside upon, possess and enjoy the said block of ground in this article described as tenant thereof, from month to month, (but without the payment of rent) or pay to the said Camilas, quarter-yearly, at the expiration of each quarter, for the use of himself and his family, the rents and profits of the

said block of ground, accrued for the quarter year next preceding such payment; and that in the event of the death of my said son, leaving his wife to survive him, then, during her widowhood, she and her family shall be permitted to reside on the said premises as tenants thereof as aforesaid, or receive the rents and profits thereof as aforesaid."

*Third.* "I give and devise to my said trustees the following described pieces or tracts of land lying in the county of Vanderburgh, in the State of Indiana, in township number six, south of range number ten, west, in the district of lands subject to sale at the land office at Vincennes, that is to say: the northeast quarter of section number fifteen, and the southern half of that part of the northwest quarter of section number fifteen, which lies north of Pigeon creek, and is commonly called the Vann farm, lying south of the fence which divides it from what is commonly called the Robinson farm, situated on the northern half of the last mentioned quarter section; also, that part of the west half of the southwest quarter of said section fifteen which lies north of Pigeon creek and adjoining the said farm, being the same fraction I purchased of David Negley; also, that part of the east half of the southwest quarter of section fifteen which lies north of Pigeon creek, and adjoining the same Vann farm, and also that part of the west half of the southeast quarter of said section fifteen lying on the north side of Pigeon creek, and also one undivided half or moiety of all the residue of my real estate not by this will devised to some other person or otherwise disposed of. To have and to hold the land and premises in and by this article of this will described and devised unto my said trustees, and the survivor or survivors of them, and their successors as such trustees, in trust, to and for the uses and purposes hereinafter declared and specified, that is to say: in trust and confidence that my said trustees, and the survivor or survivors of them, and their successors as such trustees, shall and will receive rents, issues and profits

of the land and premises in and by this third article of this my will described and devised, and appropriate and dispose of the same for the benefit of my son Camilas and his family during his life, and after his death, if his wife survive him, during her widowhood, for the benefit of his said wife and his children surviving him, subject, however, to the provisions of the fourth article of this will. And in appropriating and disposing of the last mentioned rents, issues, and profits, my said trustees shall have special regard for, and reference to, frugality and economy, and the proper education and sustenance of the children of my said son Camilas."

*Fourth.* "It is my will that upon the death of my said son Camilas and his wife, or upon his death and the intermarriage of his widow with another man, thereupon, instantly, and thenceforth, the said block of ground, or homestead, described in, and devised by, the second article of this will, and also the several parts of the aforesaid section (of land) No. fifteen, described in, and devised by, the third article of this will, together with the rents, issues, and profits thereof, shall descend, go to, and become the absolute property of, the children of my said son, living at the happening of such contingency, and such others of his children as may thereafter be born (if any), and the children of any deceased child of his, in equal proportions, as tenants in common, in fee simple, that is to say: the children of any such deceased child, shall have the share to which their parent, if living, would be entitled according to the provisions of this will; provided, that the share of each and every of such children, whilst he or she shall be a minor, shall be and remain subject to the control and management of my said trustees, according to the provisions of the third article of this will; and, as to the residue of my real estate devised to my said trustees by the third article of this will, it is my will that the children of said son Camilas, now living, and such other children as may be hereafter born (if any), shall have, possess and enjoy the same as tenants in

fee simple, upon attaining the age of twenty-one years. And upon attaining that age, each and every such child shall have, possess, and enjoy his or her share, uncontrolled by my said trustees, notwithstanding the minority of any one or more of his or her brothers or sisters, nephews or nieces; and in like manner after the death of my said son and his wife, or after his death and subsequent marriage of his widow, it is my will that the said block of. ground, or "homestead," and those parts of said section No. fifteen mentioned in, and devised by, the third article of this will, shall be held, possessed, and enjoyed by the children of my said son, now living, and such other child or children of his as may hereafter be born (if any), upon their respectively attaining the age of twenty-one years, uncontrolled by my said trustees. * * * * *

*Twelfth.* "It is my will that if any one or more of the children of my said son Camilas, or of my said daughter Juliana, now in existence, or that may be hereafter born, should die a minor and without heirs of his or her body begotten, or die after attaining the age of twenty-one years, intestate, and without heirs of his or her body begotten, then and in every such case, the estate or interest by this will given in any part of my estate to any such child so dying, shall go to, vest in, and become the property of, his or her brothers and sisters and their descendants, in equal proportions, the descendants of a deceased brother or sister taking the estate or interest to which their deceased parent would have been entitled if living. And for the want of such brothers or sisters or their decendants, such estate or interest shall go to, vest in, and become the property of, the cousins of such deceased child and their decendants (such cousins being the children of my said son, or of my said daughter, as the case may be), the decendants of any deceased cousin taking the share or interest to which their deceased parent would have been entitled if living."

It is averred in the answer, that at the death of the tes-

tator, he left him surviving, his son, Camilas C., and Saleta, the wife of the latter, and their four children, Paul Jones, Dewitt C., Robert Morgan, and Harrison Clay; and also Silas and Juliana Stephens and their four children named in the will; that shortly after the death of the testator, Harrison Clay Evans and Joshua Wing Stephens (son of Silas and Juliana) died, intestate, without issue; that afterwards, in 1843, another son was born to Camilas C. and Saleta, whose name was Berry B.; that afterwards, in 1844, Camilas C. died, intestate, leaving his wife surviving him, and leaving also surviving him his only children and heirs, Paul Jones, Dewitt C., Robert Morgan, and Berry B.; that afterwards, in 1845, Juliana Stephens died, leaving her husband, Silas, surviving her, and leaving also surviving her, her three children, Jane, Robert, and Henry, and leaving no other child or children of her body, and no descendant of any such child or children; that afterwards, in 1858, Paul Jones, Robert Morgan, and Berry B. Evans all died, intestate, neither leaving surviving him any child or children of his body begotten, or any descendant of any such child or children, Dewitt C. being at the time of the death of Paul, Robert, and Berry, the sole surviving child and heir of Camilas C. Evans; that afterwards, Robert Evans Stephens died, intestate, leaving his wife, Mary M., and his three children, Ella, Edgar, and Jane, as his only children and as his only descendants and heirs; that afterwards, in February, 1866, Dewitt C., after having attained the age of more than twenty-one years, departed this life, intestate, without ever having been married, and leaving no child or children of his body begotten, and no descendant of any such child or children surviving him, but leaving his mother, Saleta, surviving him as his sole heir at law; that Paul Jones and Robert M. (sons of Camilas) had each attained the age of twenty-one years before the times of their deaths, respectively, but that Berry B. Evans, at the time of his death, was not more than fifteen years of age; that Saleta and Dewitt C. Evans had not, nor had either

of them, any title to the land so conveyed by them to Henry C. Stephens, except such as they derived through said will; that if Saleta had such an interest as could pass by the deed, it was only the right to receive the rents and profits of the land during her natural life, which, as compared with the fee, was not and is not worth more than one-fifth part in value of the entire consideration, or of the $2,049 mentioned in the deed; that by reason of the facts averred, the title to the land attempted to be conveyed by the deed has wholly failed, unless it shall be held that it was competent for Saleta to convey the right to receive the rents and profits thereof during her life or widowhood, she being still a widow, and aged about fifty-eight years, and the rents and profits of the land since the making of the deed being of the value of one hundred dollars; that Henry C. Stephens has, during the same time, made lasting and valuable improvements on the land to the amount and value of two hundred dollars; that Henry C. Stephens, at the time of the purchase of the land, was ignorant of the purport, provisions, and contents of the will; that Saleta Evans and Dewitt C. Evans, at the time of making the deed, represented to Henry C. Stephens that they owned the land in fee absolute, and he, relying upon their representations, accepted the deed and executed the note sued on.

The first question presented is, did the children of Camilas Evans under the will take a vested, or contingent remainder in the land conveyed? A contingent remainder is defined to be "an interest in remainder, limited to take effect either to a dubious and uncertain person, or upon a dubious and uncertain event."

This question must have its solution by a reference to the language of the fourth article of the will. By the express language of that article the land was to "descend, go to, and become the absolute property of, the children" of Camilas, *living at the happening of the contingency.* The limitation was, then, to take effect "to a dubious and uncertain person."

In *Olney* v. *Hull*, 21 Pick. 311, the will contained the following clauses: "I give to my dear and loving wife, as long as she remains my widow, the improvement of all my lands and buildings:" "Should my wife marry or die, the land then shall be equally divided among my surviving sons, with each son paying sixty dollars to my daughters, to be equally divided among them, as soon as each son may come in possession of said land."

Under this will it was held, that the sons surviving the contingency, and not those surviving the testator, were meant, and that, therefore, they took a contingent, and not a vested remainder. Morton, J., in speaking for the court, says, "On the whole, we are clearly of opinion, that the fair, and only fair construction of the language in the will, gives the estate to such sons as shall survive the mother; that until her death it was uncertain who would be alive to take, and therefore, that no estate vested in any one before that event happened."

In the case under consideration, the language of the will is equally clear, that the children of Camilas, living at the happening of the contingency, and such others of his children as might thereafter be born, and the children of any deceased child of his, were to take the land in question. It is true that the law has no partiality for contingent remainders, but in all cases of doubtful construction leans toward vested remainders. But it is equally true that the intention of the testator is always to be the polar star to guide our inquiries. Whenever the meaning can be ascertained, it must govern, whether it result in contingent or vested remainders.

There is a class of cases that at first blush seem to be in conflict with the case of *Olney* v. *Hull*, *supra*, but we think that a careful examination of these cases will result in the conclusion that there is no conflict whatever. *Womrath* v. *McCormick*, 51 Penn. St. 504, is mainly relied on to establish a contrary result. The will in that case provided:—"I give

and bequeath to my said dear wife the net rents, income and interest of all my estate, real and personal, during all the term of her natural life, for her own use. But it is my desire that the surplus income of my said real and personal estate that shall remain from time to time, after the appropriation of whatsoever part thereof she may require or expend for her own use, shall be divided by her among our children, share and share alike. It is my will that upon the decease of my said dear wife, all my real and personal estate (with the exception of the homestead place aforesaid, in Frankford, whereon I now reside) shall be valued and divided into as many parts, to be equal in value as near as may be, as I shall then have children living, the issue of any deceased child to represent their respective parent or parents; and each of such issue, if any, to be considered in the division as one part only; which valuation shall be made by three competent and disinterested persons, who shall be nominated and appointed by the surviving executors of this my will, hereinafter named, and the shares so divided shall be drawn for in the manner the persons making such division shall direct, so as to designate a particular share or part of my estate for each child, and for the issue of any deceased child to whom the same shall fall, upon each drawing. And I give, devise and bequeath to each of my said surviving children, and the issue of any deceased children, such issue to stand respectively in the place of their parent, and to take together only the share their respective parent, if living, would have taken, one equal share or part of all my said estate, real and personal, divided, allotted and drawn for as aforesaid, to have and to hold their said respective shares to them respectively, and their respective heirs, executors, administrators and assigns forever. It is my will that the place in Frankford on which I now reside, containing about nine acres, hereinbefore devised to to my dear wife during her natural life, shall not (in the event of her decease prior to that time) be divided before

the year of our Lord 1870, but shall, if my said dear wife die before then, be leased in the mean time by my surviving executors from year to year, for the benefit of my estate, after which time (my said dear wife being deceased) it may be divided among my children then living, and the issue of such of them as shall be deceased, unto whom I devise the same in the shares and in the way and manner hereinbefore mentioned in regard to my other estate, devised to and ordered to be divided among them." THOMPSON, J., in speaking for the court, says: "Here the life or particular estate in the widow must certainly determine at no very remote period, and by no possibility could the remainders determine during the continuance of that estate, for they were to the several children, their heirs and assigns or issue, interchangeably, and each constituted a single unconditional estate in remainder. The devisees were all *in esse* and ascertained, and were the children of the devisor. It seems to us that there was nothing contingent in the interest devised, but only as to the time of enjoyment, and that would have no effect upon the character of the estate."

But in the case at bar, the devisees were not all *in esse.* It was the vesting of the estate, and not the division of the property, which was referred to, and embraced in, the words "thereupon, instantly, and thenceforth," used in the fourth article of the will.

In *Sturgess* v. *Pearson,* 4 Madd. 411, the testator gave by his will one-fifth of certain personal property, in the following words: "I give the interest and dividends of one other fifth part thereof to be paid to my daughter Anne Tatnall, during her natural life; and after her decease, I give the same to be equally divided amongst her three children, or such of them as shall be living at her decease, the same to be paid to them at their age of twenty-one years." The VICE CHANCELLOR says: "If the will had stopped with the bequest of the interest and dividends to A. Tatnall for her life, and after her decease to be equally divided amongst

her three children, it is clear the children would have taken vested interests; but the testator adds these words, 'or such of them as shall be living at her decease;' and upon this expression the difficulty arises. If I were to indulge conjecture, I might think the testator did not intend that the children should take unless they survived their mother; but where the expressions used are capable of a sensible effect, it is not safe to depart from them. The vested interests first given by the will, are, by the form of the expression, only defeated in case there shall be some or one, and not all of the children living at the mother's death; but that event did not happen, for there was not one child living at the mother's death. The alternative branch of the sentence, therefore, fails, and the primary expression, which gave vested interests to the children, takes effect." This decision clearly explains a sentence of a text writer (Powell on Devises) which seems to be against the conclusion to which we have arrived.

In *Danforth* v. *Talbot's Adm'r*, 7 B. Mon. 623, the devisee was *in esse;* and the limitation was not to take effect either to a dubious and uncertain person, or upon a dubious and uncertain event.

In *Moore* v. *Lyons*, 25 Wend. 119, the persons to take the remainder were *in esse* and ascertained by the will. *Vanderheyden* v. *Crandall*, 2 Denio, 9, and *Forsyth* v. *Rathbone*, 34 Barb. S. C. 388, cited by counsel, do not militate against the conclusion to which we have arrived.

Since the briefs were filed in this case, our attention has been called to the cases of *Foster* v. *Wick's Lessee*, 17 Ohio, 250; *Hempstead* v. *Dickson*, 20 Ill. 193; and *Yeaton* v. *Roberts*, 8 Foster (N. H.), 459. We have given them a careful examination. The latter of them only, seems to require comment. In that case it was held, that upon a devise of real and personal property to one for life, "then to go and descend to the children of A. and the children of B., and such other children as they may hereafter have, in equal shares, in fee," the children of A. and B. living at the death of the

testator, took a vested remainder, subject to open and admit after-born children to a participation; and that the share of one of these children who died, passed, according to its quality, to the administrator and heir of such child. The distinction, however, between that case and the one at bar is this: in the former case all the children of A. and B. were to take, in the latter only the children of Camilas who survived the happening of the contingency, and such others of his children as might thereafter be born (if any), and the children of any deceased child of his.

The next inquiry is as to the validity of the limitation to the cousins in the twelfth article. The rule is, that a limitation over by way of executory devise, in order to be valid, must be so made that the estate not only may, but must vest in possession within a life or lives in being and twenty-one years and nine months at the farthest, and if, by any possibility, the vesting may be postponed beyond this period, the limitation will be void; and the period from which the rule runs, is the death of the testator. *Sears* v. *Russell*, 8 Gray, 86.

The facts in the case at bar are within the rule. The limitation to the cousins would have taken effect in possession, if at all, by the events which have happened within the prescribed period; yet a state of facts might have existed in which it would not have taken effect within the time. The time, for aught that appears at the death of the testator, might have been extended by the birth of a child twenty years afterwards, who, within five years, should take the whole of the interest limited in the fourth article, as sole survivor of father, mother, brothers and sisters, and hold it for seventy-five years, and then die without heirs of his body; in which case, by the express terms of the will, the cousins would take under the limitation under consideration seventy-five years after the expiration of lives in being.

We do not think that the *proviso* in the eleventh section of the act regulating decents, distribution, and dower, of

February 17, 1838, in force at the death of the testator, changed this rule. That *proviso* can have its full force and effect without changing the rule against perpetuities. It could hardly be the intention of the legislature to make a change in favor of perpetuities in a section abolishing estates tail after the second generation.

The limitation being void as to the cousins, and the grand children of the testator not taking a vested, but a contingent remainder, the fee, subject to the life estate of the widow of Camilas Evans and the contingent remainder to the grandchildren, either passed under the residuary clause in the third article, or descended under the law of decents in force at the death of the testator.

From this it would follow that Dewit C. Evans, at the time he joined with his mother in the deed to Henry C. Stephens, was the owner in fee of one undivided half of the land conveyed, subject to the life estate of his co-grantor. As Henry C. Stephens is in possession of the land under a deed with full covenants, he can only insist upon a defense to the notes given for the purchase money on the ground of entire failure of title. *James* v. *The Lawrenceburgh Insurance Co.*, 6 Blackf. 525; *Whisler* v. *Hicks*, 5 Blackf. 100; *Smith* v. *Ackerman*, *id.* 541.

There has as yet been no breach in the covenants in the deed entitling the appellant to recover back any part of the purchase money. Henry C. Stephens is seized and possessed of the whole land under the deed for the life of one of the grantors, and of the undivided half of the remainder in fee. His possession as yet is rightful under the deed.

The judgment is affirmed, with costs.

*C. Baker*, *J. G. Jones*, and *C. H. Butterfield* for appellants.
*A. Iglehart* and *C. Denby*, for appellee.