## HAYES ET AL. *v.* MARTZ ET AL.

[No. 21,548. Filed October 6, 1909. Rehearing denied January 14, 1910.]

1. WILLS.—*Limiting Fee upon Fee.*—*Remainders.*—Under R. S. 1843, p. 424, §59, providing that "a fee may be. limited on a fee, upon a contingency, which, if it should occur, must happen within the period prescribed in this article," a will providing that if the devisee should die childless before he attains the age of twenty-one, remainder over to testator's other children, and if the devisee should die, leaving children, remainder over to them, is valid. pp. 282, 285.

2. WILLS.—*Perpetuities.*—*Rule against.*—At the common law the rule against perpetuities limited the period of the suspension of the power of alienation to a life or lives in being at testator's death and twenty-one years and nine months thereafter, the nine months being to cover the possible period of gestation. pp. 282, 287.

3. WILLS.—*Perpetuities.*—*Statutory Rule Against.*—Under R. S. 1843, p. 425, §66, a testator had no power to suspend the alienation of his property for a longer period than during the life or lives of persons in being when the estate was created, except that a contingent remainder in fee could be created on a prior remainder in fee to take effect upon the death of the prior remaindermen within twenty-one years, or upon any other contingency by which their estate might be determined before they attained their full age. p. 283.

4. WILLS.—*Perpetuities.*—*Rule against.*—*Executory Devises.*—At the common law an executory devise, to be valid, was required to vest in possession within a life or lives in being, or within twenty-one years and nine months thereafter, reckoning from the death of the testator, the rule having reference to time and not to persons. p. 284.

5. WILLS.—*Contingent Remainders.*—A will devising certain lands to testator's grandson, remainder over if such grandson should die childless before attaining the age of twenty-one, creates a contingent remainder, which would vest upon the happening of such contingency. p. 286.

6. WILLS.—*Remainders to Class.*—*Opening of.*—A will devising land to testator's grandson, remainder to his children, gives to such children the fee, and the class takes as the children are born, the fact that none were born at the death of the testator being immaterial. p. 286.

7. STATUTES.—*Common Law.*—*Estates.*—The statute (R. S. 1843, p. 425, §66), in reference to the alienation of estates, was enacted to modify the rules of the common law thereon. p. 286.

8.  WILLS.—*Estates.—Contingent Remainders.*—A will devising to testator's grandson a tract of land, remainder over in case of such grandson's death before he attained the age of twenty-one years, leaving no children, to testator's son and daughter, and in case of his death, leaving children, then remainder over to such children, such farm "not to be sold or disposed of by the said" grandson, gives to the grandson a contingent fee, and to his children, as well as to such son and daughter contingent remainders in fee simple, the rule in Shelley's Case not applying.  pp. 286, 287, 288, 291.

9.  WILLS.—*Devise of Fee.—Subsequent Clause Cutting Down.*— Where one clause in a will gives to the devisee a fee simple title, and a subsequent clause equally clear and distinct, gives a life estate, the latter prevails.  p. 287.

10.  WILLS.—*Construction.—Language.*—All the language used in a will should be considered in determining the intent of the testator.  p. 288.

11.  WORDS AND PHRASES.—*"Descend."—Wills.*—The word "descend," as used in a will devising to testator's grandson a certain farm, such farm, in case such grandson left children surviving, to "descend" to them, imports to "go" to them under the will, and not by descent.  p. 290.

From Noble Circuit Court; *Joseph W. Adair,* Judge.

Suit by William D. Hayes and others against Anna Martz and others.  From a decree for defendants, plaintiffs appeal.  Transferred from Appellate Court under §1394 Burns 1908, subd. 2, Acts 1901, p. 565, §10.  *Reversed.*

*Wigton & Green, Peters & Peters,* and *Robert W. Mc-Bride,* for appellants.

*T. A. Redmond, A. C. Harris, R. P. Barr* and *L. H. Wrigley,* for appelles.

MYERS, J.—Appellants instituted this suit against appellees to quiet title to real estate in Noble county, Indiana. Appellees filed cross-complaints asserting title to different parts of the land.  There was a trial by the court, special findings made, and conclusions of law stated, resulting in a decree for appellees.

The errors relied on arise upon exceptions to the conclusions of law.

John Horsely on October 5, 1848, executed a will, the material portions of which are as follows:

"Item two. I will and bequeath unto my grandson, John Horsely Hayes, son of Jarvis and Mary Hayes, deceased, the farm on which I now live [describing it], and I also bequeath to my grandson, John Horsely Hayes, $500 out of the proceeds of my personal estate."

Item three bequeaths to his son, Richard, and to his daughter, Ann Selder, the remainder of his personal property.

Item four appoints executors.

"Item five. I appoint said John Childs and William Selder guardians of the person and estate of my grandson, John Horsely Hayes, and I ordain that the rents and profits of the farm hereby bequeathed to my grandson, and the interest of the $500, also bequeathed to him (said money to be loaned at interest until he becomes of age), shall be exclusively set apart for his maintenance and education to be so applied at the discretion of his guardians. And I further will that if the father of my said grandson should take him from under the charge and control of his said guardians that the rents, profits and interest of the property hereby willed to him be retained by said guardians and paid to him when he shall arrive at the age of twenty-one years, at which time the $500 willed to him is to be paid to the said John Horsely Hayes. And I further will, shall ........................... die before he attains the age of twenty-one years, the property hereby willed to him shall be equally divided between my two children, Richard Horsely and Ann Selder. And if said John Horsely Hayes shall die leaving children, the farm shall descend to them, but is not to be sold or disposed of by the said John Horsely Hayes."

His will was probated in 1850, and this case is to be determined under the provisions of the revised statutes of 1843.

It is insisted by appellees that the case is controlled by R. S. 1843, p. 485, §5, providing that "every devise of lands

shall be construed to convey all the estate of the devisor therein, which he could lawfully devise, unless it shall manifestly appear by the will that the devisor intended to convey a less estate;'' and by R. S. 1843, p. 424, §56, which provides that ''all estates tail are abolished; and all estates which, according to the common law, would be adjudged a fee tail, shall hereafter be adjudged a fee simple; and if no valid remainder shall be limited thereon, shall be a fee simple absolute.'' Appellees also insist that the language of the will, considered as a whole, gives a fee to John Horsely Hayes in clear and explicit terms, and that the subsequent language is not sufficiently clear to cut down or reduce the estate to a life estate.

Appellants contend that under R. S. 1843, p. 424, §59, ''a freehold estate, as well as a chattel real, may be created to commence at a future day; and an estate for life may be created in a term of years, and a remainder limited thereon; a remainder of a freehold, or a chattel real, either contingent or vested, may be created, expectant on the determination of a term of years, and a fee may be limited on a fee, upon a contingency, which, if it should occur, must happen within the period prescribed in this article.'' A fee may be limited upon a fee, and a valid remainder is created by the terms of the will.

The rule against perpetuities at the common law placed the limitation at a life in being when the estate was created, and twenty-one years and nine months. *Stephens* v. *Evans* (1868), 30 Ind. 39, 51; *Sears* v. *Russell* (1857), 8 Gray 86; *Brattle Square Church* v. *Grant* (1855), 3 Gray 142, 63 Am. Dec. 725; *Ould* v. *Washington Hospital* (1877), 95 U. S. 303, 24 L. Ed. 450; *McArthur* v. *Scott* (1885), 113 U. S. 340, 383, 5 Sup. Ct. 652, 28 L. Ed. 1015.

The reason for this rule is clearly stated in 2 Washburn, Real Property (4th ed.), *358, *359. That this limit of time within which an executory interest must take effect, was no

doubt suggested by the fact that an estate tail, according to the English law, could not be made inalienable for any longer period. For example, A would settle his lands to himself for life, remainder to his eldest son, remainder to his second son in tail male, remainders over. Since an estate tail could be barred by common recovery, A in settling his estate in this manner, could only make the lands inalienable until the eldest son was born, and became of age. It would, therefore, at the farthest remain inalienable during his life and twenty-one years thereafter, viz., a life or lives in being, and twenty-one years; to this was added the nine months required for the gestation of a child *en ventre sa mere*, when posthumous children were declared capable of taking future estates. This was a rule which grew out of the statutes of mortmain, and *quia emptores*, expressly enacted to remove restraint upon alienation. For full discussion of these questions see *DePeyster* v. *Michael* (1852), 6 N. Y. 467, 57 Am. Dec. 470, with the valuable notes; *Jackson* v. *Schutz* (1820), 18 Johns. *174, 9 Am. Dec. 195 and notes; *Mandlebaum* v. *McDonnell* (1874), 29 Mich. 78, 18 Am. Rep. 61; *Perin* v. *Carey* (1860), 24 How. 465, 494, 16 L. Ed. 701.

Thus it will be seen that at common law the estate might be entailed to one not in being when the estate was created, and to posthumous children, and so by R. S. 1843, p. 425, §66, the restriction, or limitation is to a first taker in being when the estate was created, and the twenty-one years allowed by the English law are eliminated, except that a contingent remainder might be limited upon a first remainder, in case the first remainderman failed to attain the age of twenty-one years, or upon any other contingency by which the estate might be determined before such person should attain the age of twenty-one years.

At common law the limitation by way of executory devise, in order to be valid, must be so made that the estate not

only may, but must vest in possession within a life or
4. lives in being, and twenty-one years and nine months,
and if by any possibility the vesting may be post-
poned beyond this period, the limitation will be void, and
the period from which the rule runs is the death of the tes-
tator. *Stephens* v. *Evans, supra; Sears* v. *Russell, supra.*
But this rule is also changed by §§62, 63, 65, R. S. 1843,
p. 425, which are as follows: ''Section 62. No future es-
tate otherwise valid, shall be void on the ground of the prob-
ability or improbability of the contingency on which it is
limited to take effect.'' ''Section 63. No remainder, valid
in its creation, shall be defeated by the determination of the
precedent estate, before the happening of the contingency on
which the remainder is limited to take effect; but should
such contingency afterwards happen, the remainder shall
take effect in the same manner and to the same extent as if
the precedent estate had continued to the same period.''
''Section 65. No expectant estate shall be barred by any
alienation, or other act of the owner of the precedent estate,
nor by destruction of such precedent estate by disseisin, or
the forfeiture, surrender, or merger thereof.''

In *McArthur* v. *Scott, supra,* a statute of Ohio of 1811,
somewhat similar but less restricted than our own, was con-
sidered by the Supreme Court of the United States. The
statute provided that ''no estate in fee simple  *  *  *  in
lands or tenements lying within the State, shall be given or
granted by deed or will to any person or persons, but
such as are in being, or to the immediate issue or descend-
ants of such as are in being, at the time of making such deed
or will. 2 Chase's Statutes, 762.'' The court said on page
382 of the case just cited: ''Under the common-law rule
against perpetuities, a devise to a class, some members of
which may not possibly take within the prescribed period,
is wholly void. *Leake* v. *Robinson* [1817], 2 Mer. *363;
*Pearks* v. *Moseley* [1880], 5 App. Cas. 714. But that is be-
cause, as observed by Sir William Grant, ''it is the period of

the vesting, and not the description of the legatees, that produces the incapacity,' and the devise is not 'to some individuals who are, and to some who are not capable of taking.' *Leake* v. *Robinson, supra.* The rule of the common law, by which an estate devised must at all events vest within the life or lives in being and twenty-one years afterward, has reference to time and not to persons. Even the 'life or lives in being' have no reference to the persons who are to take, for the testator is allowed to select, as the measure of time, the lives of any persons now in existence; and the 'twenty-one years afterwards' are not regulated by the birth or the coming of age of any person, for they begin, not with a birth, but with a death, and are twenty-one years in gross, without regard to the life, or to the coming of age, of any person soever. *Cadell* v. *Palmer* [1833], 1 Cl. & Fin. 372, 7 Bligh N. S. 202. It is doubtful, to say the least, whether the like effect can be attributed to the statute of Ohio, which has no reference to time, and only avoids devises to persons who are not either in being themselves, or the immediate issue or immediate descendants of persons in being, at the time of the making of the will." In *Fowler* v. *Duhme* (1896), 143 Ind. 248, 288, this court refers to the case of *Stephens* v. *Evans, supra,* and says in reference to the rule in that case in regard to alienation, that it was evidently without reference to the statute. It is quite clear that the rule there stated is the common-law rule, and not the rule under the statute of 1843, or the present statute. In that case it is said on page 294, with reference to the statute: "It lays down a definite rule as to the period of suspension, and all other suspension is positively forbidden. That period is measured by the existence of lives in being when the estate is created; no other rule of admeasurement is admitted." We think the rule correct, and adhere to it. It therefore results that under R. S. 1843, p. 424, §59, a fee could be limited upon a fee, provided the limitation to the first taker did not extend beyond a life

or the lives in being at the time the testator died; and that the devise to Richard Horsely and Ann Selder, being limited upon the contingency of John Horsely Hayes's arriving at the age of twenty-one years, was a contingent remainder in fee.

It appears from the special findings that at the time of the death of the testator and the vesting in John Horsely Hayes of whatever estate or interest he had, the latter was unmarried, and there was only a contingency that he would ever have children, or that he would arrive at the age of twenty-one years. Upon the failure to do so, and being without children, the contingent remainder to Richard Horsely and Ann Selder would have vested.

But there is an attempt to limit a remainder in fee to his children, upon his estate, and we have seen by the statute, that the fact that he had no children when the testator died was immaterial, so long as the contingency of his having children existed, and he did, as the findings show, leave children, who are appellants here. And while he alienated the land prior to the birth of children, this had no effect upon the remainder in the children, who took when and as they were born, unless this case falls within the rule that an estate in fee tail at common law, and a fee simple absolute under the statute vested in John Horsely Hayes, by reason of the failure to limit a valid remainder thereon.

It must be clear that the statute of 1843 was enacted in view of the common-law rules and in modification thereof. It is impossible, taking the whole instrument together, to arrive at any other conclusion than that the testator's intention was that his grandson should have a contingent fee, with a contingent remainder over to Richard Horsely and Ann Selder, and in the other, remainder over to such children as John Horsely Hayes should leave at his decease, thus limiting a fee upon a fee.

In no other way can the use of the language in the will,

the prohibition against sale being significant, be accounted for, and it in itself does, as it seems to us, disclose that intention, and the question is, Has he limited a valid remainder to them within the rules of law?

Appellees contend that the clear language of the will gives a fee tail at common law, and a fee simple absolute under the statute to John Horsely Hayes, and that it cannot 9. be cut down except by subsequent language equally clear and specific. That rule of construction is well established in this State. *Snodgrass* v. *Brandenburg* (1905), 164 Ind. 59; *Teal* v. *Richardson* (1903), 160 Ind. 119; *Lumpkin* v. *Rodgers* (1900), 155 Ind. 285; *Mulvane* v. *Rude* (1896), 146 Ind. 476, 484.

But there is an equally well-settled rule, that where an estate otherwise an estate in fee simple is devised in one clause of a will in clear and decisive terms, and the 2. subsequent provisions clearly and distinctly show an unmistakable intention upon the part of the testator to give an estate less than a fee simple, such later intention must control. *Pate* v. *Bushong* (1903), 161 Ind. 533, 63 L. R. A. 593, 100 Am. St. 287; *Fenstermaker* v. *Holman* (1902), 158 Ind. 71; *Rusk* v. *Zuck* (1897), 147 Ind. 388; *Mulvane* v. *Rude, supra.*

John Horsely Hayes alienated the land March 16, 1866. His age at the time of the execution of the will and the death of John Horsely is not found, but it is found that he 8. was under the age of twenty-one years, unmarried, and had no children born to him until after 1866. It is found that the oldest child at the time of the trial—1905—was thirty-eight years of age, and the youngest twenty-six years of age, and that John Horsely Hayes died March 13, 1904. We have seen that under sections sixty-two, sixty-three and sixty-five of the act of 1843 (R. S. 1843, p. 425), the fact that he had no children when the future contingent estate was created, could not defeat the estate;

the contingency that he might have children being sufficient to let in the remainder, the same as if the first estate had continued unchanged until the death of John Horsely Hayes, so that it seems to us that but one question remains, and that is, taking the whole instrument together, Does it give a fee to John Horsely Hayes in clear and explicit language, and then seek to cut it down by the later language, or does it, as a whole, manifest an intention to limit a fee upon a fee, and to create a remainder contingent upon his leaving children? The clause creating a contingent remainder in Richard Horsely and Ann Selder is quite as much a limitation on the fee as the limitation to Hayes's children, and while the first clause of the will standing alone would have vested a fee simple absolute in John Horsely Hayes, we cannot ignore the other language of the will, which we would have to do to support the claims of appellees.

We are required in the construction of a will to consider and give effect to all parts thereof which can be done under the rules of law, and it seems the later language of the will clearly denotes the later intention on the part of the testator to create a remainder, contingent upon John Horsely Hayes's leaving children, and this the testator might do under the statute. This later intention, being inconsistent with the first clause, is controlling. *Sturgis* v. *Work* (1890), 122 Ind. 134, 17 Am. St. 349; *John* v. *Bradbury* (1884), 97 Ind. 263; *Butler* v. *Moore* (1884), 94 Ind. 359; *Critchell* v. *Brown* (1880), 72 Ind. 539; *Holdefer* v. *Teifel* (1875), 51 Ind. 343; *Evans* v. *Hudson* (1855), 6 Ind. 293; *Kelly* v. *Stinson* (1847), 8 Blackf. 387; 3 Jarman, Wills (5th Am. ed.), 705; 1 Redfield, Wills (4th ed.), *443; Page, Wills, §470.

The case does not fall within the rule of *Snodgrass* v. *Brandenburg, supra,* for the fourth clause in that will was simply in the nature of a request for an equal division among the testator's children. The whole scope of the will in the case of *Teal* v. *Richardson,*

*supra,* shows an unmistakable right and power of disposition in the first devisee, and falls within the rule in *Shelley's Case* (1581), 1 Coke *94, as a rule of property and not of construction. If in this case it could be said that its terms denote an intention that John Horsely Hayes should take an absolute estate, coupled with a devise over in the case of his decease without issue, we should have a case falling within the rule that the death referred to is a death in the lifetime of the testator, and the primary devisee would take a fee, but this will clearly does not refer to a death in the lifetime of the testator, but to the birth of a child surviving Hayes. *Lumpkin* v. *Rodgers, supra,* is a case where the whole will shows an unmistakable intention to invest the wife with the fee, and this is also true of the case of *Mulvane* v. *Rude, supra.* This case seems to fall clearly within the last clause of the rule of *Wild's Case* (1599), 6 Coke *17, where it is held that if a man "devises land to husband and wife, and after their decease to their children, or the remainder to their children, * * * although they have not any child at the time, yet every child which they shall have after, may take by way of remainder, according to the rules of the law; for his intent appears that their children should not take immediately, but after the decease of Rowland and his wife." This rule is in accordance with the statute of 1843, which changes the rule of the common law as to the creation of future estates, and also as to the requirement that the limitation must be upon an event certain to happen, and vests an estate upon a contingency which may happen, however improbable or uncertain, at the time of the devise. R. S. 1843, p. 425, §§61, 63, 65, and 66.

The language here is plain that the devisor intended, in the event that John Horsely Hayes had children at the time of his death, that the estate should go to them, and the case does not fall within the rule in *Shelley's Case, supra,* for it is clear, from the instrument and the facts found, that there

was no intention to vest a present estate, or attempt to entail it, but that upon the contingency of John Horsely Hayes's leaving children the land should vest in them. *Moore v. Gary* (1897), 149 Ind. 51; *Conger* v. *Lowe* (1890), 124 Ind. 368; *O'Harrow* v. *Whitney* (1882), 85 Ind. 140; *Harmon* v. *Brown* (1877), 58 Ind. 207; *Smith* v. *Hunter* (1870), 33 Ind. 106; *Jones* v. *Miller* (1859), 13 Ind. 337; *Matlock* v. *Lock* (1906), 38 Ind. App. 281.

The words of the will, "descend to them" (his children), clearly should be construed to "go" to them. *Borgner* v. *Brown* (1893), 133 Ind. 391; *Dennett* v. *Dennett*

**11.** (1860), 40 N. H. 498; *Ballentine* v. *Wood* (1887), 42 N. J. Eq. 552, 9 Atl. 582; *Halstead* v. *Hall* (1883), 60 Md. 209. It could not be construed, in the sense insisted upon by appellees, as being an intention that upon John Horsely Hayes's death the estate should vest in them, or descend to them by operation of law; because (1) it was unnecessary to use the language if it was intended that the land should descend by operation of law; (2) to have had children John Horsely Hayes must have had a wife, and dower, or one-third would descend to her depending on the date of his death. So that to give any import to the language, compels the conclusion that an estate was created contingent upon his having children at his death, and that the land should go to them to the exclusion of his wife, if he should leave a wife.

The judgment is reversed, with instructions to the court below to restate its conclusions of law and enter a decree in accordance with this opinion.

## ON PETITION FOR REHEARING.

MYERS, J.—The rule declared in the case of *Boling* v. *Miller* (1893), 133 Ind. 602, cited by counsel upon petition for rehearing, arose under the statute as it existed in 1883, and is in strict accordance with the opinion in this case

upon the subjects of a contingent fee and a contingent remainder. The same thing is true as to *Bailey* v. *Sanger* (1886), 108 Ind. 264.

The rule in the case of *Teal* v. *Richardson* (1903), 160 Ind. 119, has no application here, for two reasons: (1) because the rule in *Shelley's Case* (1581), 1 Coke *94, 8. does not apply; (2) the rule where there is a devise over, conditioned upon the first devisee's dying without issue, without other indication as to the time of the vesting of the estate, refers to a death in the lifetime of the testator, which cannot apply here, because the will indicates the contingency of an estate's vesting, as one arising after the death of the testator.

The doctrine of *Mulvane* v. *Rude* (1896), 146 Ind. 476, cannot apply, because there the bequest of the personal property is so connected with the devise of the real estate as to invoke the rule in construction, that when a will purports to dispose of real estate and personal property in the same words and in the same connection, and when it is manifest that the testator intended both to go together, it will be so construed, for while we here have both kinds of property mentioned in the same clause, we find in the fifth clause a limitation upon the control of the bequest, and the rents and profits, leaving the principal of the bequest, and the rents and profits of the real estate payable to John Horsely Hayes upon the contingency of his arriving at the age of twenty-one years; failing so to do, both the personalty and the realty are to go to others, so that even the personalty is not bequeathed to him absolutely, which is a declaration the reverse of the rule in *Mulvane* v. *Rude, supra.* True, the court must construe the will under the law in force when the testator died, and under that law the widow of John Horsely Hayes, surviving him, would have taken dower only. But he was bound to know when the will was executed that the rule might be changed, and it was changed before John Horsely Hayes died, and unless the will devised the land to

his children, to the exclusion of his surviving widow, she would have taken one-third in fee, so that it was manifestly not intended that they should take under the statute of descents, and equally manifest that the surviving widow should not take, in any event, but that upon the contingency of children surviving John Horsely Hayes, they should take under the will.

We recognize to the fullest the apparent hardship in this case, and the fact that appellants may have been benefited by the father's receipt of the value of the real estate, but we cannot make a rule to fit a hard case in violation of the plain intent of the testator. Besides, it seems to us that a flaming signal was set up in the face of every purchaser, by the language that the farm "is not to be sold, or disposed of by the said John Horsely Hayes."

The petition for a rehearing is overruled.