### CLOW et al. v. HOSIER et al.

(Court of Appeals of District of Columbia. Submitted March 6, 1919. Decided May 5, 1919.)

#### No. 3204.

1. WILLS ⬤⇒436—CONSTRUCTION—WHAT LAW GOVERNS.

The law of Indiana will govern the interpretation of a will made in that state.

2. WILLS ⬤⇒601(1)—CONSTRUCTION—ESTATE—FEE SIMPLE—REPUGNANT LIMITATIONS—"HEIRS."

Under a will governed by the Indiana Law, which left the residue of an estate to a daughter, with a subsequent provision that, if she should die without heirs, the residue in her hands should go to certain persons, held, that the subsequent provision did not cut down the absolute estate previously given, since the word "heirs" was not equivalent to "children."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Heirs.]

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the Supreme Court of the District of Columbia.

Bill by Gloveania V. Clow, Marcellus R. Taylor, Clara E. Hodson, and others against Isaiah Hosier, Robert Lansing, Charles H. Butler, and others. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

Charles H. Merillat and C. E. Breckons, both of Washington, D. C., for appellants.

W. W. Scott, E. F. Colladay, and H. S. Barger, all of Washington, D. C., for appellees.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District dismissing appellants' bill.

In 1865 Clara E. Port, a resident of the state of Indiana, died there, leaving a will, which was duly admitted to probate in Indiana. After directing payment of debts and other charges, the will provides:

"Second. Then I give and devise all of the residue of my estate to my daughter, Carrie E. Port.

"Third. And if my daughter, Carrie E. Port, should decease and at the time of her decease, leave no heirs, then I give and devise the residue of my estate that may be in the hands of my daughter, Carrie E. Port, or her guardian, to my brother, Isaiah Hosier, William Lewis Taylor, Enoch S. Taylor, David L. Taylor, Marselius R. Taylor, Francis F. Taylor, Clara E. Taylor, and Gloviana V. Ballinger, and said estate shall go into the hands of the said Isaiah Hosier, William Lewis Taylor, Enoch S. Taylor, David L. Taylor, Marselius R. Taylor, Francis F. Taylor, Clara E. Taylor, and Gloviana V. Ballinger. The same is to be equally divided between the eight named persons in said will.

"Fourth. I do hereby nominate and appoint my esteemed friend William (Ramsey) Hansey guardian of my daughter Carrie E. Port until she arrives at the age of twenty-one years and my said guardian is hereby enjoined to give my daughter Carrie E. Port, a good English education."

The beneficiaries named in the third paragraph of the will were the brother of testatrix and children of her deceased brothers and sisters. Caroline E. Port, referred to in the will as Carrie E. Port, was about three years of age when her mother died. Upon her arrival at majority in 1883, her then guardian turned over to her as the assets of the estate, after cost of administration and debts had been paid and deduction made for cost of the education and maintenance of the daughter, the sum of $7,394.59. She later became a resident of the District of Columbia, and so remained until her death in April of 1914, never having married. She left a will, which was finally admitted to probate.

Appellants in their bill allege that Caroline E. Port, through good management, so increased the value of the estate which had come into her hands from her mother that at her death it amounted to $31,000; that the estate was impressed with a trust in favor of the beneficiaries named in the third paragraph of her mother's will, which attached itself to all investments and reinvestments; and such is their contention here.

[1, 2] As this is an Indiana will, the law of that state must govern its interpretation. In Rogers v. Winklespleck, 143 Ind. 373, 42 N. E. 746, the first eight items of the will gave to each of the testator's chil-

dren a small bequest. By the ninth item there was given to the widow the residue of the estate, both real and personal, "subject to a division among the aforesaid heirs at her death, in accordance with their obedience to her as she shall deem proper." The court pointed out that the item devising the residue of the estate, standing alone, carried a fee simple absolute; that no estate was left in the testator; and that a conclusion to give the children an estate "must be reached from words deemed clearly repugnant to those devising the fee." The court said:

"We do not question the rule that a fee may be held in trust for future distribution, with discretion in the trustee as to the quantities into which it shall be divided and apportioned; but we do question the possibility of vesting a fee simple absolute in the first taker, and of ingrafting upon that estate an element which deprives it of every essential feature of a fee simple. The ingrafted clause must, in every instance, be of such clear and undoubted force as to cut down the first estate to an estate consistent with such clause, or it must fail for repugnancy, or because the testator has not made his intention manifest."

It was ruled that the widow took a fee simple absolute.

In Mulvane v. Rude, 146 Ind. 476, 45 N. E. 659, the court said:

"When real estate is given absolutely to one person with a gift over to another of such portion as may remain undisposed of by the first taker at his death, the gift over is void as repugnant to the absolute property first given."

In support of that ruling the court cited many authorities and expressly alluded to Ide v. Ide, 5 Mass. 500, wherein the testator in one clause of the will devised to a son Peleg a fee simple absolute. Following this devise were these words:

"And further it is my will that if my son Peleg shall die and leave no lawful heirs, what estate he shall have to be divided between my son John and my grandson Nathaniel," etc.

It was ruled that the intention of the testator that the devisee should have an unqualified power to dispose of the property devised to him at his pleasure rendered the limitation over void for inconsistency. The court said:

"If this construction required any support, it might be added that the limitation over is as well of personal property as of real estate; and there can be no doubt, from the nature of the personal estate, that the testator considered it liable to the disposition of Peleg, and that at his death no part of it might be in his possession, as the devise of it was absolute."

Langman v. Marbe, 156 Ind. 330, 58 N. E. 191, is very much in point. There an estate in fee simple was devised to a wife. Other clauses of the will then provided that when the youngest child should reach the age of 21 years the property should be divided equally between all the children, provided that if the wife remarried before that event the division should take place then. The court said:

"It is settled law that, when an estate in fee simple is clearly given a person, the estate so given cannot be cut down or modified by subsequent clauses in the will, unless the intention to do so is manifest from words as clear and certain as those which give the fee-simple estate. * * * It is evident, under the settled rule in this state, that it cannot be said that it was the clear intention of the testator, by clauses 3 and 4, to reduce the estate of the widow to one for life or years."

In the present case, it of course is conceded that, under second item of the will, Carrie E. Port was given an estate in fee simple. Under the third paragraph it is provided that, if the devisee should "at the time of her death, leave no heirs, * * * the residue of my estate that may be in the hands of my daughter Carrie E. Port, or her guardian," shall be equally divided among the eight persons named. Appellants contend that the word "heirs" is to be read as "children," and that, when so read, the provisions of the will are consistent and harmonious. That contention does violence to the twice clearly expressed intent of the testatrix: First, to the grant in the second paragraph of the absolute fee; and, second, to the words (in the very paragraph relied upon by appellants) giving the daughter unqualified control over and disposition of the estate during her life, with power to use it all. Paragraph 3, therefore, instead of clearly indicating an intent on the part of testatrix to cut down the estate previously given, quite clearly shows a contrary intent. In other words, it is confirmatory of and consistent with the second paragraph. Certainly, when the will is taken as a whole and considered with reference to the rule in Indiana, it may not be said that the testatrix manifested a clear intention, by clause 3, to reduce the estate of the daughter to one for life.

Among the cases cited by appellants is Granger v. Granger, 147 Ind. 95, 44 N. E. 189, 46 N. E. 80, 36 L. R. A. 186, 190. In that case, as the court found:

"The devise was distinctly: First, to Edwin, an estate for the term of his natural life, and nothing more; and this in a clause by itself. In the second clause, the devise, after Edwin's death, was 'to the heirs of his body by him begotten, if there be any such heirs him surviving,'" etc.

The difference between that case and this, therefore is too apparent to require further comment.

As to Hayes v. Martz, 173 Ind. 279, 89 N. E. 303, 90 N. E. 309, the provisions of the will there bear little analogy to those of the will before us, for in that case the first taker was prohibited from the sale or disposition of the property involved, and the language used by the testator left no doubt as to his intent.

Without further analysis of the other cases cited by appellants, it may be said that they are not in point.

The decree is affirmed, with costs.

Affirmed.