LEHMAN ET AL. *v.* THE STATE OF INDIANA, EX REL. MILLER, ATTORNEY-GENERAL.

[No. 6,463. Filed May 12, 1909. Rehearing denied October 27, 1909. Transfer denied February 4, 1910.]

1. TREATIES.—*States.*—*Statutes.*—Treaties made by the federal government are superior to state laws. p. 334.

2. DESCENT AND DISTRIBUTION.—*Regulation of.*—*Aliens.*—*Treaties.*—The power of the State to regulate the subject of descent and distribution of the property of aliens is subject only to constitutional restrictions, federal laws and treaties. p. 334.

3. DESCENT AND DISTRIBUTION.—*Aliens.*—*Powers of States.*—The State, in the absence of constitutional restrictions, federal laws, or treaty rights, may deny to aliens the privilege of inheriting lands, or it may grant such right under restrictions which to it may seem proper. p. 334.

4. STATUTES.—*Construction.*—*Giving Effect to Language.*—In the construction of a statute effect should be given to all of the language used, if possible. p. 335.

5. TREATIES.—*Switzerland.*—*Aliens.*—*Holding Property.*—By the treaty with Switzerland in 1855, in States where aliens were not granted a right to hold lands, time was given within which such aliens had the right to sell their lands and to withdraw the proceeds. p. 335.

6. ALIENS.—*Ownership of Lands.*—*Limitations.*—Under the Swiss treaty of 1855, an alien Swiss may acquire land in Indiana only by devise or descent, and then, can hold it only for five years, otherwise the land escheats to the State. pp. 335, 337.

7. DESCENT AND DISTRIBUTION.— *Taking and Transmitting by Aliens.*—The power to take, and the power to transmit lands by descent are separate; and at the common law an alien could not take nor transmit, his right so to do being wholly statutory. p. 336.

8. WORDS AND PHRASES.— *"Hold."— Real Property.*— The word "hold," as applied to the title to real estate, imports the duration of the tenure of the estate. p. 336.

From Superior Court of Marion County (68,219) ; *Vinson Carter,* Judge.

Suit by the State of Indiana, on the relation of Charles W. Miller, Attorney-General, against Catherine Lehman and others. From a decree for plaintiff, defendants appeal. *Affirmed*

*Edenharter & Mull,* for appellants.

*Charles W. Miller,* Attorney-General, *C. C. Hadley* and *Charles Martindale,* for appellee.

COMSTOCK, P. J.—On June 7, 1904, appellee filed in the court below its second amended information to recover, under §3941 Burns 1908, Acts 1903, p. 184, of the appellants, and to quiet title to, certain real estate in the city of Indianapolis, which real estate was owned at the time of his death by John Lehman, who died intestate on July 21, 1894, a naturalized citizen of the United States and a resident of Marion county, Indiana, and who left surviving him certain heirs, all of whom were then, and such of them as are still alive and the descendants of those who are dead are, residents and citizens of the republic of Switzerland. A trial was had by the court, and a decree entered in favor of appellee.

The errors assigned and not waived challenge the correctness of the conclusions of law numbered one, two and three.

Section 3941, *supra,* or so much thereof as is necessary for the determination of the question here involved, is as follows: "All other aliens [other than those having declared their intention, etc., as provided in §3940 Burns 1908,

Acts 1893, p. 377] may take and hold land by devise and descent only, and may convey the same at any time within five years thereafter, and no longer, and all lands so left and remaining unconveyed at the end of five years shall escheat to the State of Indiana.'' It is claimed by appellants that §3941, *supra*, is in conflict with Article V of the treaty between the United States and the Swiss Confederation, ratified Nov. 8, 1855 (11 Stat. U. S., p. 587), which reads as follows: ''The citizens of each one of the contracting parties shall have power to dispose of their personal property within the jurisdiction of the other, by sale, testament, donation, or in any other manner; and their heirs, whether by testament, or *ab intestate*, or their successors, being citizens of the other party, shall succeed to the said property, or inherit it, and they may take possession thereof, either by themselves or by others acting for them; they may dispose of the same as they may think proper, paying no other charges than those to which the inhabitants of the country wherein the said property is situated shall be liable to pay in a similar case. * * * The foregoing provisions shall be applicable to real estate situated within the states of the American Union, or within cantons of the Swiss Confederation, in which foreigners shall be entitled to hold or inherit real estate. But in case real estate situated within the territories of one of the contracting parties shall fall to a citizen of the other party, who, on account of his being an alien, could not be permitted to hold such property in the state or in the canton in which it may be situated, there shall be accorded to the said heir, or other successor, such term as the laws of the state or canton will permit to sell such property; he shall be at liberty at all times to withdraw and export the proceeds thereof without difficulty, and without paying to the government any other charges than those which, in a similar case, would be paid by an inhabitant of the country in which the real estate may be situated.''

The special findings may be summarized as follows: John Lehman, a native of Switzerland, on October 19, 1880, made application and became a citizen of the United States and of the State of Indiana, and from that date until his death he resided in Marion county, in said State. Said John Lehman became owner of certain property in the years 1881, 1883 and 1888, by deeds of conveyance. From the dates of said several conveyances, he continuously remained, and was at the time of his death, the owner in fee simple of said several pieces of real estate. He died intestate at Indianapolis, Indiana, July 21, 1894, leaving surviving him as his only heirs at law certain heirs (naming them). All of the defendants hereto were, at the time of the death of said John Lehman and have continuously thereafter remained and now are, residents and citizens of Switzerland. His estate was duly administered upon and the administrator discharged. The defendants are the sole and only heirs at law of said John Lehman, deceased. No part or portion of said real estate, nor any interest therein, has ever been conveyed by either or any of the defendants, or any other person, since the death of said John Lehman, but since the death of said John Lehman, his heirs, through an agent in Indianapolis, have been collecting and receiving the rents, income and profits from said real estate up to the time of the commencement of this suit, since which time they have been paid to a receiver heretofore appointed in this cause, and the defendants claim to be the owners of said real estate by inheritance from said John Lehman, deceased.

Upon said findings the court stated its conclusions of law, in substance, as follows: (1) That §3941, *supra*, is not in conflict with any provision of the treaty between the United States and Switzerland, ratified on November 8, 1855; (2) that the real estate has escheated to the State of Indiana for the common school fund; (3) that the claims of the defendants are a cloud upon the title of said State of Indi-

ana to the said real estate, and that the title of the State should be forever quieted and confirmed against the claims of the defendants.

Appellants insist that Article V of said treaty makes provision for two distinct classes of aliens, to wit: Those who are, by the laws of the state or canton, entitled to hold or inherit real estate, and those who, on account of being aliens, are not permitted to hold real estate. The treaty recognizes the right of either country to deny to foreigners the right to hold or inherit real estate; but, by the provisions of said treaty, where they do inherit, their rights are governed by the provisions relating to personal property, and not under the last clause thereof, which provides for a limitation such as the state or canton may establish.

Treaties are a part of the supreme law of the land. State laws must give way to treaties made by the federal government. 1. 1 Lewis's Sutherland, Stat. Constr. (2d ed.), §22; *Blythe* v. *Hinckley* (1900), 127 Cal. 431, 59 Pac. 787; *Adams* v. *Akerlund* (1897), 168 Ill. 632, 48 N. E. 454; *Scharpf* v. *Schmidt* (1898), 172 Ill. 255, 50 N. E. 182.

Subject to the provisions of the organic law of the State, if any, relating thereto, and the Constitution, laws and treaties of the United States, the state, through its 2. General Assembly, has full power to regulate the law of descent, and to determine whether aliens shall be permitted to hold real estate, and, if so, to what extent and under what circumstances.

The question in this case is whether the statute in question is in conflict with said treaty between the United States and the Swiss Confederation. We think it is 3. firmly settled, except so far as limitations have been placed on the inherent sovereignty of the states by treaty, that the state may deny aliens the privilege of inheriting lands; and it follows that when it grants it, it may annex to the grant any conditions which it supposes

may be required by its interests or policy. *Donaldson* v. *State, ex rel.* (1906), 167 Ind. 553; *Mager* v. *Grima* (1850), 8 How. 490, 12 L. Ed. 1168; *Chirac* v. *Lessee of Chirac* (1817), 2 Wheat. 259, 4 L. Ed. 234; *Hauenstein* v. *Lynham* (1879), 100 U. S. 483, 25 L. Ed. 628; *Hanrick* v. *Patrick* (1886), 119 U. S. 156, 7 Sup. Ct. 147, 30 L. Ed. 396; *Blythe* v. *Hinckley* (1901), 180 U. S. 333, 21 Sup. Ct. 390, 45 L. Ed. 557; *Wunderle* v. *Wunderle* (1893), 144 Ill. 40, 33 N. E. 195, 19 L. R. A. 84.

4. In construing statutes, "that construction is favored which gives effect to every clause and every part of the statute, thus producing a consistent and harmonious whole. A construction which would leave without effect any part of the language used should be rejected if an interpretation can be found which would give it effect." 26 Am. and Eng. Ency. Law (2d ed.), 618.

5. In negotiating said treaty between the United States and the Swiss Confederation, the federal government, recognizing that states might not permit aliens to hold real estate, provided that in such states where aliens are not "permitted to hold such property," "there shall be accorded to said heir, or other successor, such term as the laws of the state or canton will permit to sell property," and he shall be at liberty to withdraw and export the proceeds without any other charges than inhabitants of the country would pay.

6. A distinction is made in the treaty between the words "inherit" and "hold." The statute of 1881 in this State made a distinction between acquiring and holding real estate. Acts 1881, p. 84, §1, §2967 R. S. 1881. The title to the act was: "An act to authorize aliens to hold title to real estate, convey the same, etc." Said Section one provided: "Natural persons who are aliens, whether they reside in the United States or any foreign country, may acquire, hold and enjoy real estate," etc. In section one of the act of 1885, in controversy here (Acts

1885, p. 79, §3332 Burns 1894), it is provided "that all aliens residing in the State of Indiana who shall have declared their intention to become citizens of the United States, conformably to the laws thereof, may acquire and hold real estate in like manner as citizens of this State." Section two (§3333 Burns 1894) provides that "all other aliens may take and hold land by devise and descent only, and may convey the same at any time within five years," etc. A distinction is made between "acquiring," "taking" and "holding." A limitation on the taking or acquiring is made. An alien not residing in the State, and who has not made a declaration of citizenship, cannot take by purchase, but can take only by devise and descent. Such an alien can hold and convey only for a limited period of five years; at the end of which period the lands shall escheat. In this State aliens are thus entitled to inherit for a limited purpose and a qualified estate.

In the case of *Donaldson* v. *State, ex rel., supra,* it is pointed out that the power to take by descent and the power to transmit by descent are two separate and distinct 7. powers; that the alien at common law can neither take nor transmit title to real property by descent; that his power to do either is dependent upon the statutes of the state in which the real estate is situated.

There is a well-defined meaning to the word "hold" as applied to real estate. Its meaning in connection with the title to real estate is something different from the 8. mode of acquisition; it has to do with the duration or tenure of the estate. In the case of *Runyan* v. *Lessee of Caster* (1840), 14 Pet. *122, 10 L. Ed. 382, the Supreme Court makes this distinction and says: "The doctrine of the supreme court of Pennsylvania, in the case of *Leazure* v. *Hillegas* [1821], 7 Serg. & R. (Pa.) *313, is directly applicable to this case. The question then before the court was as to the right of the Bank of North America to purchase, hold and convey the land in question, and the court took the

distinction between the right to purchase, and the right to hold lands, declaring them to be very different in their consequences; and that the right of a corporation in this respect was like that of an alien, who has power to take, but not to hold lands; and that although the land thus held by an alien may be subject to forfeiture, after office found, yet until some act is done by the government, according to its own laws, to vest the estate in itself, it remains in the alien, who may convey it to a purchaser; but he can convey no estate which is not defeasible by the commonwealth.'' See, also, *Hickory Farm Oil Co.* v. *Buffalo, etc., R. Co.* (1887), 32 Fed. 22. In the case of *Wunderle* v. *Wunderle, supra,* the question had reference to a statute similar to the statute here under consideration, which accorded to nonresident aliens a period of three years to sell lands which might fall to them by descent, in which case a right, under a treaty between the United States and the German Empire, was set up as being in conflict with and superior to the statute. It was claimed that appellants took such an interest in the lands in controversy as they could hold until it was assailed in a direct proceeding instituted by the state. But the court held that, as the appellants had no power to take, in default of any competent heirs capable of inheriting, the land escheated to the state, distinguishing between the power to take and the power to hold.

Under the language of the third and fourth clauses of Article V of the treaty, referring to the power to hold, and the rights of Swiss aliens in the states of America in respect to lands, there are three supposable cases with which the treaty has to deal: (1) States in which nonresident aliens may both inherit and hold. (2) States in which nonresident aliens may inherit but not hold. (3) States in which nonresident aliens may neither inherit nor hold. In the first place they shall have the same rights that they have in regard to personal property; that is to say, they shall have the right to transmit to their heirs by devise

or by descent; they may take possession by themselves or by parties acting for them; they may dispose of the land, paying no other charges than those which the inhabitants of the country are liable to pay; they shall have equal rights with the inhabitants of the country to the protection of the laws relating to probate and administration. The second and third cases are dealt with by the fourth clause of Article V, providing for states in which aliens could not be permitted to hold such property. The classification is based upon a disqualification to hold, and prescribes what shall be the rights of aliens in those states in which they are not permitted to hold. In respect to this clause, the Supreme Court of the United States, in the case of *Hauenstein* v. *Lynham, supra,* said that it was "left to the laws of the several states and cantons respectively to fix the limitation in this as in other cases." It is further said in the same case: "If a state or canton had a law which imposed a limitation in this class of cases, nothing more was necessary. If it had not such a law, it was competent to enact one, and until one exists there can be no bar arising from the lapse of time."

The law of Indiana grants precisely what the treaty guarantees: A right to have the inheritance and to hold it for a limited time for the purpose of sale and the withdrawal of the proceeds, and prescribes that if the privilege is not availed of within the term allowed by the act the estate shall escheat. Chief Justice Marshall, in the case of *Chirac* v. *Lessee of Chirac* (1817), 2 Wheat. 259, 4 L. Ed. 234, with respect to just such an act granting a defeasible term to alien heirs, said: "But to this enacting clause is attached a proviso that whenever any subject of France shall, by virtue of this act, become seized in fee of any real estate, his or her estate, after the term of ten years be expired, shall vest in the state, unless the person seized of the same shall, within that time, either come and settle in, and become a citizen of this state, or enfeoff thereof some citizen of this or some other of the United States of America. The heirs of John Baptist

Chirac, then, on his death, became seized of his real estate in fee, liable to be defeated by the nonperformance of the condition in the proviso above recited. The time given by the act for the performance of this condition expired in July, 1809, four months after the institution of this suit. It is admitted, that the condition has not been performed; but it is contended that the nonperformance is excused, because the heirs have been prevented from performing it by the act of law and of the party. The defendant, in the court below, has kept the heirs out of possession, under the act of the State of Maryland, so that they have been incapable of enfeoffing any American citizen; and having been thus prevented from performing one condition, they are excused for not performing the other. Whatever weight might be allowed to this argument, were it founded in fact, its effect cannot be admitted in this case. The heirs were not disabled from enfeoffing an American citizen. They might have entered, and have executed a conveyance for the land. Having failed to do so, their estate has terminated, unless it be supported in some other manner than by the act of Maryland."

Said treaty provides for two different classes of laws: (1) Where the laws of the state permit aliens to hold or inherit, and (2) where they are not permitted to hold. In the latter case the treaty expressly provides that the state or canton may fix the term in which to sell said property. Were the construction insisted on by appellants to be placed upon the treaty there would be no need of the last clause, because in every case in which they could inherit they would fall within said first clause. By the laws of our State aliens are not permitted to hold real estate, and, consistent with the last clause of said treaty, the time in which they may transfer it has been limited. The court did not err in its conclusions of law.

Judgment affirmed.

Hadley, J., did not participate.