## McCOY, TRUSTEE, ET AL. v. HOUCK, EXECUTOR.

[No. 22,053. Filed July 2, 1912. Rehearing denied December 17, 1913.]

1. WILLS.—*Construction.*—*Circumstances and Conditions Attending Execution.*—In the construction of a will the whole language of the instrument should be construed together, and in ascertaining the testator's intention it is proper to consider the circumstances and conditions attendant upon its making. p. 640.

2. WILLS.—*Construction.*—*Designation of Devisees.*—*Classes.*—A devise of property to be equally divided between two daughters named, "and my two grandchildren * * * to receive the same share that would have descended to my son * * * that is one-third thereof", etc., evinces an intention to put the two daughters in one class and the two grandchildren in another class. p. 642.

3. WILLS.—*Construction.*—*Estates in Trust.*—*Words Sufficient to Create Trust.*—"*Take and Hold.*"—Under a will which put the testator's two daughters and two grandchildren in separate classes, providing that the grandchildren were "to take and receive under this will, subject to the conditions hereafter named", and in the next section providing a trustee "to take, hold and manage" the estate given to the grandchildren until the contingencies named in the next succeeding clause, in the meantime using of the profits thereof enough only for the education and support of such grandchildren, the intent was to invest title in the trustee; the words "take and hold" being words commonly used and sufficient to imply, if not create, a title and not mere possession. p. 642.

4. WILLS.—*Construction.*—*Contingent Estates and Interests.*—*Contingencies on Which Estate Depends.*—Under a devise to two grandchildren subject to a trust to take, hold and manage the estate so devised until certain contingencies, in the meantime using the profits thereof for their education and support, and providing that if either died before having children born his share should go to the other, and that if both died without

having children born to them their shares should be distributed to the other beneficiaries under the will, the trust thus created was for such grandchildren jointly and for each of them separately and continued in the whole to the death of the survivor. p. 643.

5. WILLS.—*Construction.—Estates Created.—Life Estates.*—Where a testator devised property in trust for two grandchildren to be held and the profits thereof used for their education and support, with the provision that if either died before having children born his share should go to the other, and that if both died without either having children born their share of the estate should be distributed to the other beneficiaries under the will, such grandchildren took a life estate in the profits with remainder for life to the survivor. p. 644.

6. WILLS.—*Construction.—Devise of Rents and Profits.*—A devise of the rents and profits carries the estate to which they are incident. p. 645.

7. WILLS. — *Construction. — Disinheriting Children.* — Unless unavoidable, a construction of a will is not to be adopted which will disinherit a child or children. p. 645.

8. WILLS.— *Construction.— Vesting of Contingent Estates.*— The law regards it essential that title should vest at the earliest possible moment, so that under a will where the title to property devised does not vest in the first beneficiary, and it was the testator's intention, as gathered from the whole instrument to create an income, and to preserve the *corpus* beyond the life of the beneficiary, the title will by implication vest in the natural object of the care and solicitude of the tenant for life upon the happening of the first contingency, both on account of the presumptions against intestacy and disherison, and the imputation against a testator of cutting off his issue. p. 646.

9. WILLS.—*Construction.—Contingent Estates. — Remainders. —* Where a testator devised certain property in trust for two grandchildren as a class, providing that the profits only were to be used for their education and support, and that if either should die before having children born to him his share should go to the survivor, and that if they both died without having children born to either of them, their share of the estate should be distributed to the other beneficiaries of the will, and a construction of the whole instrument evidenced an intention to put the property beyond the control of the grandchildren, such grandchildren took a life estate with contingent remainder in their children, or, this failing, remainder in fee to the testator's other children, within the rule of a spendthrift trust. p. 646.

10. JUDGMENT.—*Conclusiveness.*—A suit by a *cestui* under a testamentary trust against his trustee for an accounting, in which

children whose interest was that of remaindermen were not parties and in which they were not represented by guardian, could under no circumstances be binding on them and a decision therein is not conclusive so as to preclude a construction of the will in a subsequent action by the personal representative of the plaintiff in the former action, in which such minors are represented by guardian and in which different circumstances and conditions are disclosed with reference to the testator's situation in making the will. p. 647.

11. COURTS.—*Probate Court.—Jurisdiction.*—Where a trustee and guardian appointed by the circuit court of a county were in possession of real estate wholly within such county, the custody of such property was to some extent in such court and it had jurisdiction over the property and over them so that no other court could exercise jurisdiction over the same until the primary jurisdiction was in some manner divested; and the appointment of a receiver by the probate court of another county for the rents and profits of such real estate while the same was so in the custody of such circuit court was erroneous. p. 648.

From Probate Court of Marion County; *Frank B. Ross,* Judge.

Action by James A. Houck, executor of the last will and testament of Elmer G. Devin, deceased, against John R. McCoy, trustee under the last will of Nancy Devin, deceased, and others. From an interlocutory order appointing a receiver, the defendants appeal. *Reversed.*

*O. M. Welborn* and *J. E. Welborn,* for appellants.

*M. M. Bachelder,* for appellee.

MYERS, J.—This is an appeal from an interlocutory order of the Marion Probate Court, appointing a receiver over objection and exception of appellants, to take charge of real estate in Gibson County, Indiana, in their possession and hold the same, the proceeds to be paid and distributed at the termination of a proceeding to sell real estate to pay debts. Among a great number of averments the complaint contains the following, in effect: That Nancy Devin died November 5, 1893, testate, the owner in fee simple of the real estate in question; that her will was duly probated, and a copy thereof is set out in the complaint; that as a

devisee under the will, Elmer G. Devin became the owner in fee of said real estate upon the birth of a child to him in October, 1909; that remaining the owner of said real estate, he died in October, 1910, testate; that his will was duly probated in the Probate Court of Marion County, Indiana, that by his will the plaintiff Houck was appointed executor thereof and trustee thereunder, and all property of said Elmer, real and personal, was devised to said Houck as such executor and trustee, and full authority given him to make all settlements, pay all debts of said Elmer, sell all real estate necessary to pay such debts and fully administer his estate; that appellant, John H. Miller, is guardian of the minor defendants in the case, Walter Devin and Kenneth Devin; that as such guardian he is in possession of the real estate adverse to the appellee; that such guardian claims that by virtue of said will of Nancy Devin his said wards and not the said Elmer G. Devin are the owners in fee of said real estate; that the appellant, John R. McCoy, successor of Henry L. Wallace, trustee of a trust created by said will embracing said real estate, unites with said Miller in said claim, and both said appellants refuse to surrender possession to the appellee. The complaint prays judgment against appellants for possession of the real estate, against appellant Miller for $1,000 for detention thereof, against all the defendants in the cause, quieting title in the appellee, and on the hearing, an order authorizing and empowering the appellee to sell the real estate including all interest of the widow of Elmer or other defendants in the cause, to pay indebtedness of Elmer G. Devin.

The evidence given at the hearing is without conflict as to any question sought to be presented on this appeal. The controversy is over the construction to be given the will of Nancy Devin, deceased. It is necessary to set out the second and subsequent clauses:

(2) "I hereby declare that I have advanced to my daughter, Nancy C. French (now deceased) and to her

children, more than it is possible for me to bequeath to my other heirs. I did not do this through partiality, but owing to her situation, I felt it to be my parental duty to make said advancements to enable her to support herself and children, and raise them until they were able to support themselves. This duty I fulfilled until the death of said daughter, Nancy C. French, knowing as I did, that if I had not made said advancement, that the said Nancy and her children would have suffered, but in justice to my other children and heirs, I cannot bequeath to the said children of my said daughter Nancy, nor any of them any portion of the remainder of my estate.

(3)  All my silverware, bedding, furniture, books, wearing apparel and other household effects of every kind I bequeath to my daughters, Susan E. Ragland and Sallie A. Devin, they to make division thereof between themselves as they may agree.

(4)  I desire that of the estate which I shall leave that first there be set apart the sum of three thousand dollars which said sum shall be placed in the hands of Susan E. Ragland and held and used by her upon the following trusts and purposes, to-wit: said trustee shall invest said fund in safe securities and from the dividends arising therefrom, she shall pay out and expend such sum as is necessary for the proper care and sustenance of my afflicted son, Joseph F. Devin, so long as he shall live, and when this trust shall determine, that then said trustee shall distribute said amount among the beneficiaries of my will as hereinafter named, but I expressly direct that all obligations of every kind now held by me or due me from my said son Joseph shall be deemed cancelled and that no payment shall ever in any wise, be required from him of any sum which I may have heretofore advanced, loaned or received from him and that the dividends from the fund so set aside as aforesaid, shall be expended for his benefit, as aforesaid, solely upon the discretion of the trustee aforesaid and for no other purpose and in no other manner whatever.

(5)  All the remainder of my real estate and personal property shall be divided equally among my children, Susan Ragland and Sally A. Devin, and my two grand children, Nellie R. Devin and Elmer G., to receive the same share that would have descended to my son James A. Devin (now deceased) who was their father, that is one-third thereof and each beneficiary hereunder shall be charged with advancements to the following amounts,

set opposite their respective names, to wit: Susan E. Ragland, $1,351.53; Sally A. Devin, $1,230.08; Nellie R. Devin and Elmer G. Devin, together $1,420.73, and this is done that there may be *equality* between them, said Nellie and Elmer being charged with such advancement as were made to their father, also in order to make the amount charged to them above and to *take and receive under this will subject* to the conditions hereafter named.

(6) I hereby nominate and appoint Henry L. Wallace as trustee for Nellie and Elmer and for each of them, who shall take and hold and manage such of my estate as is *given* to my grandchildren until the *contingencies* named in the next succeeding clause of this will, in the meantime using of the profits thereof enough only for the education and economical support having in view the probable value of their inheritance.

(7) If Nellie R. Devin dies before she has children born unto her, her share of my estate, shall go to her brother Elmer, if he survives her. If Elmer dies before he has children born unto him, his share of my estate shall go to his sister Nellie, if she survives him, but if they *both die* without having children born to them, *their share of my estate shall be distributed* to the other beneficiaries named in item (5) of this will."

The errors relied upon for reversal are specifically that the Probate Court of Marion County, Indiana, erred in appointing a receiver in this cause for the following reasons: Elmer G. Devin never had any estate or interest in the real estate in question, except what he took as devisee under the will of Nancy Devin, and he took under said will no other interest than that of a beneficiary for life under the trust created in item 6 thereof. No reason or cause is shown of any kind for appointing a receiver in this cause. No danger is shown of waste, loss, injury, lack of care for any property or funds pending the litigation. This application for a receiver is but a part of, and in furtherance of an unlawful scheme and effort to obtain possession and control of the property in question, convert it to the use of parties participating in the effort, and defraud of said property all the persons lawfully and rightfully entitled thereto.

The rights of all the parties are relegated to, and depend upon the construction to be given the will of Nancy Devin, deceased. McCoy is trustee for Nellie (Devin) Steele, granddaughter of Nancy Devin under the will of the latter, and was also trustee for Elmer G. Devin, grandson of Nancy under her will. John H. Miller is guardian of Kenneth Devin, a son of Elmer G. Devin born in wedlock; Walter Devin is a devisee under the will of Elmer G. Devin, deceased. In order to construe a will and to ascertain the intention of the testator the circumstances and conditions attendant upon its making are proper to be considered, and the whole language of the instrument construed together. *Daugherty* v. *Rogers* (1889), 119 Ind. 254, 20 N. E. 779, 3 L. R. A. 847, and notes; *Nelson* v. *Nelson* (1905), 36 Ind. App. 331, 75 N. E. 679; *Eubank* v. *Smiley* (1892), 130 Ind. 393, 29 N. E. 919; *Kilgore* v. *Kilgore* (1890), 127 Ind. 276, 26 N. E. 56; *Board, etc.* v. *Dinwiddie* (1894), 139 Ind. 128, 37 N. E. 795; *Hayes* v. *Martz* (1910), 173 Ind. 279, 288, 89 N. E. 303, 90 N. E. 309; *Pate* v. *Bushong* (1903), 161 Ind. 533, 538, 69 N. E. 291, 63 L. R. A. 593, 100 Am. St. 287.

The husband of Nancy Devin died in the year 1864, and she remained a widow until her death in 1893. At the time of her husband's death she was left an estate of approximately $50,000 in value, and its management devolved upon her. She had two sons, James and Joseph, and three daughters. The care of the estate of her sons and the care of the children of one of her daughters had fallen upon her. James the father of Elmer and Nellie had no occupation, earned nothing and was an habitual drunkard and led a wasteful life of dissipation and by August, 1867, had by reason of his dissolute and reckless habits wasted a large part of an estate of $30,000 or more left him by his father and was then declared an habitual drunkard, and placed under guardianship of his mother, which continued until his death, and was a constant source of anxiety and worry

to her, and she was drawn into divers lawsuits in the defense of the property of James.  That the husband of her eldest daughter by his intemperate habits had wasted most of the daughter's estate which descended to her from her father.  That her son Joseph dissipated a large portion of his patrimony and became insane, and for years before the making of her will had been in an insane hospital.  James while under guardianship married, and Elmer and Nellie were children of that marriage.  Surrounded by these conditions, Nancy Devin in 1887 made this will under consideration.

It is the contention of appellee that by the fifth clause of her will she gave the same estate to her two daughters and to her two grandchildren, Elmer and Nellie, to wit: the residuary estate in fee, and that it is not cut down by explicit language, or if this be not true, that the contingency of the birth of a child to Elmer G. Devin before his death, matured the contingent estate into a contingent remainder in fee, while it is the contention of appellants that taking the will in all its parts, the contingencies referred to are the birth of children, and that upon such contingency the property vested in such child or children, and that pending the happening of this contingency the title is in the trustee, and that Elmer Devin having had a child born to him and surviving him, the child takes the fee, and that no estate at any time vested in Elmer or Nellie Devin.  At the time this will was executed there were two statutes in force: §3995 Burns 1908, §2959 R. S. 1881, reading as follows: "A freehold estate, as well as a chattel real, may be created to commence at a future day"; and §3996 Burns 1908, §2960 R. S. 1881, reading as follows: "A remainder may be limited on a contingency, which, in case it should happen, will operate to abridge or determine the precedent estate."  This latter statute is directly the reverse of the common-law rule, for under that rule an executory devise

could only be limited upon events certain to happen. *Hayes
v. Martz, supra.* Upon oral argument the question was put
by appellees' counsel, that, If the estate did not vest in fee
in Elmer G. Devin upon the birth of a child, what became
of it, and where was the title pending that event? It is
conceded that Elmer and Nellie Devin took no estate unless
the birth of a child occurred, which it is insisted are the
"contingencies" upon which title did vest in them.

Reading the whole instrument together, the first clause
of the will evinces an intention to put the two daughters,
in one class and the two grandchildren in another
class, and as to the latter, eliminating the portions
of the section which are merely explanatory it would
read, "to receive  *  *  *  and to take and receive
under this will, subject to the conditions hereafter
named." The sixth clause provides a trustee "to take,
hold, and manage such of my estate as is given to my said
grandchildren until the contingencies named in the next
succeeding clause of this will, in the meantime using of
the *profits thereof* enough only for the education and eco-
nomical support, having in view the probable value of their
inheritance." The language of the fifth clause clearly dis-
closes taking and receiving under other conditions of the
will. The language in the sixth clause that the trustee is
to "take and hold," are words commonly used, and suffi-
cient to imply, if not create, a title, and not mere posses-
sion. *Godfrey v. Godfrey* (1861), 17 Ind. 6, 79 Am. Dec.
448, and notes; *Lehman v. State, ex rel.* (1910), 45 Ind. App.
330, 88 N. E. 365; *Burden v. Burden* (1899), 159 N. Y.
287, 54 N. E. 17; *Close v. Farmers Loan, etc., Co.* (1909), 195
N. Y. 92, 87 N. E. 1005; *United States Coal, etc., Co. v.
Randolph County Courts* (1893), 38 W. Va. 201, 18 S. E.
566; *Stansbury v. Hubner* (1890), 73 Md. 228, 20 Atl. 904,
11 L. R. A. 204, 25 Am. St. 584; *Witsell v. City of Charles-
ton* (1875), 7 S. C. 99; *State, ex rel. v. Leete* (1881), 16
Nev. 242; *Hurst v. Hurst* (1874), 7 W. Va. 289; *Runyan v.*

*Coster* (1840), 14 Pet. 130, 10 L. Ed. 382.   The words "to hold" have been held to mean to derive title, and a trust to hold property is not a passive trust.   *Ure* v. *Ure* (1900), 185 Ill. 216, 56 N. E. 1087; Anderson, Law Dictionary.

The evident purpose was to vest title in the trustee, for in no other way could the testator provide for her grand-children, whose ages do not appear, and at the same time provide against alienation or squandering of the property, as to which she had had experience.   That the trust did not extend to the benefit of the whole of the property to Elmer and Nellie is apparent from the clause setting apart the *profits* only to their use.   The estate in the property itself was vested in the trustee.

The next question is, what were the "contingencies" referred to in item six, as "the contingencies named in the next succeeding clause".   It will be noted that the phrase is "take, hold and manage   *   *   *   *until* the contingencies, etc."   We may be aided some by propounding and answering some inquiries.   (1) Must the trust necessarily run until the death of both Nellie and Walter, for the benefit of the survivor as to all the trust property, or does it determine as to a' moiety of the property on the death of either, without a child born?   (2) Upon the death of either without the birth of a child to either of them, what estate if any, vests in the survivor?   (3) If a child is born to either, who takes the fee?   The trust was created for both, and specifically embraces "such of my estate as is given to my grandchildren until the contingencies named," etc.   It is a trust for them jointly and for each of them separately.   It is not a fair implication that upon the death of one, the survivor shall take it divested of the trust, because the same reason holds as to all of it as to a part, viz., to put it beyond the power of either to obtain control of it, the very object of the trust.   The fair implication from the whole will and the circumstances and conditions, is to fix the duration of the trust in the

whole, at the death of the survivor. *Corey* v. *Springer* (1894), 138 Ind. 506, 37 N. E. 322; 1 Perry, Trusts (6th ed.) §313.

It certainly would be a forced construction to hold that the testator felt it necessary to tie up the direct shares, and prevent their alienation, and yet upon the death of either of the beneficiaries, to let that share in to be controlled and disposed of by the survivor. This answer to the first inquiry, if correct, necessarily furnishes the answer to the second, viz., that they took a life estate in the profits, with remainder for life to the survivor. The contingencies so far as the holding is concerned, are the death of both: there were no other contingencies affecting the holding or the duration of the trust. If it was regarded by the testator inexpedient in the first instance, to vest the fee simple of a moiety in either of her grandchildren, the same reason would obtain as against the vesting of such moiety in fee, in the survivor, and for the same reason there is a strong implication that neither of them was to take a fee. Elmer and Nellie each had a child during their lifetime. If either Elmer or Nellie had died before the death of their grandmother, without a child born, it must be clear that the trust would embrace the share of the one dying, for the benefit of the other, as the vesting of the estate in the trustee must be at the death of the testator. If either had died prior to the death of the testator, and had left a child, or children that would not have cut down the benefit of the profits of the whole to the survivor, and if the child or children took any estate, its enjoyment would be postponed until the death of the survivor. If either or both survived the testator, the birth of a child did not cut down the profits of the whole to the survivor. These views are in consonance with the expressed purpose and the implied objects of the creation of the trust.

As involving the third inquiry, we come to item 7. What was the intention of the testator in the use of the language

"dies before she (or) he has children born", as having regard to the title. Was that event or its failure intended to vest, or direct an estate, if so to whom? If the original grant was to the two grandchildren subject to a defeasance, we should have a different question; but the title was not vested in them, but in a trustee, an important consideration, if the testator intended them to take a fee, indefeasible upon the birth of a child, for then it would have been easy to create it, subject to such defeasance or contingency. But she did not do that, showing pretty conclusively that she did not intend that the two grandchildren should ever have more than the profits for life, and it is not clear that in any contingency that there could be more than a life estate in them. *Fenstermaker* v. *Holman* (1902), 158 Ind. 71, 62 N. E. 699, and cases cited. If she had devised to them directly the rents, issues and profits, it would be a

6. strong circumstance, under the rule, that a devise of the rents and profits carries the estate to which they are incident. *Skinner* v. *Spann* (1911), 175 Ind. 672, 93 N. E. 1061, 95 N. E. 243; and cases cited; *Thompson* v. *Murphy* (1894), 10 Ind. App. 464, 37 N. E. 1094; *Beilstein* v. *Beilstein* (1899), 194 Pa. St. 152, 45 Atl. 73, 75 Am. St. 692. The fact that she did not do so, but put the profits in the hands of, and subject to the discre-

7. tion of a trustee, is another strong circumstance as indicating the purpose to raise a fund for the benefit of her grandchildren, and not to vest them with title. If this be true, a construction is not to be adopted, unless unavoidable, which will disinherit a child or children. *Aspy* v. *Lewis* (1899), 152 Ind. 493, 52 N. E. 756.

Under many of the early English cases, where there was a devise directly, subject to a defeasance as, if "a child be not born," or "if not married" or "without having children" and the like, the title was held to vest in fee at once upon the birth of a child, upon the theory of the earliest investiture of title being desirable, and an implica-

tion will not be let in, to vest it in the child or another, irrespective of subsequent conditions or events. But the rule is different when there is no vesting of title in the first beneficiary, being in and of itself an indication of an intention not to confer a title, and especially where a construction conferring title, would result in defeating an intention gathered from the whole instrument to create an income, but preserve the *corpus* beyond the life of the beneficiary, possibly to guard against the only consequence which might ensue from vesting title. In such case, as the law regards it essential that a title should vest, at the earliest possible moment though subject to a life estate, or to possession in another, even to raise an income, by implication it will vest in the natural object of the care and solicitude of the tenant for life, upon the happening of the first contingency, both on account of the presumptions against intestacy and disherison, and the imputation against a testator of cutting off his issue. *In re Hoffman's Will* (1911), 201 N. Y. 247, 94 N. E. 990; *Close* v. *Farmers Loan, etc., Co., supra; Anderson* v. *Messinger* (1906), 146 Fed. 929, 77 C. C. A. 179, 7 L. R. A. (N. S.) 1094; *Orr* v. *Yates* (1904), 209 Ill. 222, 70 N. E. 731; *King* v. *King* (1897), 168 Ill. 273, 48 N. E. 582; *In re Blake's Will* (1910), 157 Cal. 448, 108 Pac. 287; *Ball* v. *Phelan* (1908), 94 Miss. 293, 49 South. 956, 23 L. R. A. (N. S.) 895; *Beilstein* v. *Beilstein, supra; Holton* v. *White* (1852), 23 N. J. L. 330.

Evidently the birth of a child to either of the grandchildren was the subject of the solicitude of the testator, for if not, it would have been unnecessary to refer to the birth of a child, by either providing that the grandchildren, or the survivor should take the fee, or that on failure of issue, the property should pass under item 5, indicating the disposition of the fee in a child or children of both, or a child or children of the survivor, to vest immediately upon a child being born. Certainly it was never intended that the contingency of a birth of a

child should put it in the power of the grandchildren to defeat the very object of creating the trust, viz., putting the property beyond their disposition, when the occasion for its preservation would become all the greater. The case falls within the rule of *Hayes* v. *Martz, supra,* of creating a life estate in the grandchildren, and a · contingent remainder in their children, or this failing, remainder in fee to the testator's other children, and within the rule of a spendthrift trust as laid down in *King* v. *King, supra; Bennett* v. *Bennett* (1905), 217 Ill. 434, 75 N. E. 339, 4 L. R. A. (N. S.) 470; *Wagner* v. *Wagner* (1910), 224 Ill. 101, 91 N. E. 66, 18 Ann. Cas. 490; 26 Am. and Eng. Ency. Law (2d ed.) 138, 139.

But it is the chief contention of appellees that a construction of this will was made in *Devin* v. *McCoy* (1911), 48 Ind. App. 379, 93 N. E. 1013, in the Appellate Court, in which this court denied the petition for transfer. In that case Elmer G. Devin brought a suit against McCoy trustee, one of the appellants here, for an accounting. To that cause neither Kenneth Devin, nor the child of Nellie Devin nor Walter Devin, nor the guardian of Kenneth and Walter were parties. After the decision in the Appellate Court upon the suggestion of the death of Elmer Devin prior to the decision, the legatees under his will, including Kenneth whose interest was adverse to the position of his father, were substituted as appellants, so that under no circumstances could that decision be binding on Kenneth Devin or the child of Nellie, or on Walter Devin, an acknowledged son of Elmer, but born out of wedlock. Upon the presentation then made, this court fell into the error of regarding the will as falling within the English rule heretofore adverted to, as not constituting a spendthrift trust, but as it is evident that as to Kenneth and Walter Devin, and the child of Nellie, the real parties in interest the ultimate beneficiaries, that that decision could have no effect upon their rights, it is immaterial whether

it might affect the rights of the trustee, or Nellie Devin, but in any event, as the judgment was reversed, and the issues would necessarily have to be reformed, the actual conditions can be presented and the rights of the parties adjusted, for it is apparent that Kenneth and Walter Devin, could not be forced into a position by the substitution made in the Appellate Court, of being compelled to assert a state of facts giving rise to rules of law, which were directly opposed to, and would defeat their rights, the result of which is the necessary negation of the claim here made, by the executor of the will of Elmer Devin, which would sweep the property from them. The facts disclosed on this appeal are materially different from those presented in the former case. In that case none of the circumstances or conditions or the situation of the testator or the other parties were disclosed as here, nor was the question of the interest of the survivor in the profits, or the interest of the child or children of Elmer, and the child of Nellie Devin considered, or presented, or decided, except inferentially, and could not in fact, or in law have been decided at all, by reason of the absence as parties, of those who were directly interested and affected.

It appears from the petition, and from the evidence, that McCoy trustee appellant, successor in trust, of Wallace, appointee under the will of Nancy Devin, under appointment of the Gibson Circuit Court, and John H. Miller, guardian under appointment of the Gibson Circuit Court, are in possession of the real estate, which is wholly in Gibson County. To some extent therefore, the property was, and is in the custody of that court. The trustee and the guardian must each report to it, and a report by them that the property had been taken from them by the Marion Probate Court would be no answer for, or justification to them, in an accounting. That court had jurisdiction over the property and over them, to the extent that no other court could exercise jurisdiction over the

property in custody of its officers, or them, or its disposition until, and unless the primary jurisdiction is in some manner divested. *Pipher* v. *Fordyce* (1882), 88 Ind. 436; *Fort Wayne, etc., R. Co.* v. *Mellett* (1883), 92 Ind. 535; *Stout* v. *LaFollette* (1878), 64 Ind. 365; *Thiebaud* v. *Dufour* (1876), 54 Ind. 320; *Pugh* v. *Jones* (1907), 134 Iowa 746, 112 N. W. 225, 11 L. R. A. (N. S.) 706, 120 Am. St. 451, 13 Ann. Cas. 499.

The Marion Probate Court had no jurisdiction over the rents and profits of the property in the possession of the trustee and guardian, and erred in appointing a receiver thereof, and the order and judgment appointing such receiver was erroneous and is reversed and set aside, with direction to the Marion Probate Court for further proceedings not inconsistent with this opinion.

Morris, J., dissents.

NOTE.—Reported in 99 N. E. 97. See, also, under (1) 40 Cyc. 1392, 1413; (2) 40 Cyc. 1473; (3) 40 Cyc. 1727; (4) 40 Cyc. 1809; (5) 40 Cyc. 1775; (6) 40 Cyc. 1536; (7) 40 Cyc. 1412, 1498; (8) 40 Cyc. 1650; (9) 40 Cyc. 1615, 1619, 1664; (10) 23 Cyc. 1280, 1302; (11) 11 Cyc. 985, 34 Cyc. 44. As to bequests and devises to class, and who entitled to pay thereunder, see 73 Am. St. 413. As to when legacies are vested and when contingent, see 10 Am. St. 471. As to the sufficiency of an instrument to create a spendthrift trust, see 3 Ann. Cas. 1010; 18 Ann. Cas. 495.