## HAINES *v.* INDIANA TRUST COMPANY, TRUSTEE.

[No. 10,960.   Filed May 31, 1921.]

1.  WILLS.—*Construction.*—*Testator's Intention.*—The great purpose in construing a will is to ascertain and give effect to the intention of the testator in opposition to which all technical rules must give way.  p. 656.

2.  WILLS.— *Construction.*—*Testator's Intention.*— *Construction as a Whole.*—For the purpose of ascertaining the testator's intention all the provisions of the will relating to the subject of the inquiry must be construed together.  p. 656.

3.  WILLS.—*Construction.*—*Testator's Intention.*—*Ambiguities.*— *Extrinsic Circumstances.*—In case of ambiguity in a will, the court may inquire into the situation and circumstances of the testator and his family, of his property and his legatees, and similar extrinsic circumstances as they existed at the time of the execution of the will, for the purpose of aiding in its construction.  p. 657.

4.  WILLS.—*Construction.*—*"Doctor Bills".*—Where testatrix's will directed the trustee to pay "any doctor bills incurred during the last sickness" of her brother, *held* that the quoted words were intended by testatrix to include not only the bills for the services of physicians, but also the expense incurred in employing a nurse to administer the medicine and treatment prescribed by the attending physician.  p. 657.

From Marion Probate Court; *Mahlon E. Bash,* Judge.

Action by Nannie Morris Haines against the Indiana Trust Company, trustee under the trust created by the will of Kate Morris Brown, deceased.  From a judgment for defendant, the plaintiff appeals.  *Reversed.*

*Samuel D. Miller, Frank C. Dailey, William H. Thompson, Lon A. Robertson, and Albert L. Rabb,* for appellant.

*Ryan, Ruckelshaus & Ryan,* for appellee.

NICHOLS, J.—Appellant filed the claim here involved against appellee as the trustee of the trust estate and trust funds created by the will of Kate Morris Brown, deceased.

The substance of the first paragraph of such claim, so far as here involved, is as follows:

Kate Morris Brown died testate in Marion county,. Indiana, on August 20, 1915, she executed a will November 13, 1913, which was duly admitted to probate in the probate court of Marion county, Indiana, and under which appellee was appointed executor and duly qualified as such..

Item 2 of said will bequeaths to the brother of the testatrix, David C. Morris, $75 per month during his life, to be paid by appellee as hereinafter provided. It also bequeaths to such brother all the furniture in his room and such other pieces of furniture in the house, and such sheets, and beds and bedding as will make his room comfortable. It then provides that appellee as trustee aforesaid shall pay the funeral expenses, *and any doctor bills* incurred during the last sickness of said brother, and that appellee, as such trustee, cause the inscription, "David C. Morris, September, 1860," to be placed upon the tombstone at Crown Hill Cemetery.

Item 7 of said will then directs that a sufficient sum of money or property be set aside as in the judgment of the probate court of Marion county, State of Indiana, will produce sufficient income to pay the bequests in Item 2, and appellee as such trustee is authorized to manage and invest such funds so set aside to the best interests of the estate under the orders and directions of the probate court. Other items of the will contain specific bequests, and Item 6 devises and bequeaths the residue of the estate of the testatrix to her two sons, George Brown, U. S. N., and Hugh Brown, Lieut. U. S. N.

July 1, 1916, pursuant to said will, the sum of $28,000 was set aside by the court as the trust fund required by said Item 7, and said appellee qualified as trustee of said trust fund and has ever since and is now acting as such

trustee. By an order of court said trustee was authorized and directed "to pay the funeral expenses and doctor bills incurred during the last sickness of said David C. Morris." Said David C. Morris was the younger brother of said decedent and of appellant. At the time of the execution of said will, said David C. Morris was fifty-three years of age and unmarried; he was dependent solely upon his ability to work to support himself, having accumulated no property; these facts were known to the decedent at the time of the making of said will; said David C. Morris died July 25, 1919. For several years prior to his death he has been in failing health; at and prior to the time of the death of said testatrix said Morris was in poor health, which fact was known to said testatrix and his health continued to fail up to the time of his death; in the summer of 1917, said Morris was stricken with apoplexy from which he never fully recovered, although his health improved in this particular after some months; in the fall of 1917, said Morris was afflicted with serious diseases of the heart, lungs and liver; his heart was dilated, its muscular walls thinned out and weak; he was afflicted with what is commonly known as valvular heart disease and mitral insufficiency; his lungs were so affected that they had half the normal breathing space, and but slight physical effort brought on serious paroxysms of labored breathing and heart action; his right lung was practically useless and his left lung seriously affected; he was also afflicted with enlargement of the liver, as a consequence of which its functioning was impaired. Said Morris during the fall of 1917, continuously through the year 1918, and until he died in July, 1919, was in a state of nervous debility and anxiety, which, together with the diseases from which he was suffering required that he have constant medical care and attention; among other things said Morris had suffered from

what was known as cardiac asthma, and as often as several times a week from the middle of November, 1917, until the time of his death, he was afflicted with paroxysms and attacks, any one of which might have resulted fatally unless prompt and decisive medical measures were taken to allay the same; as a matter of fact it was during one of these paroxysms that said Morris died, the manifestations of which were identical with a hundred or more like attacks which he had previously had.

On or about November 19, 1917, said David C. Morris went to live with and at the house of this appellant; this step was taken because of the fact that the physician in attendance upon said Morris required and ordered that he be at some place where he could receive competent nursing and medical attention; from that time forward until the death of said Morris (at the special instance and request of said David C. Morris and of said Indiana Trust Company, trustee, acting by its president) this appellant acted and performed the duties of his nurse and doctored him under and pursuant to the directions of the attending physicians.

During the period from the middle of November, 1917, until the time of his death, the physicians who attended upon said Morris paid him something over 500 necessary visits; they prescribed medicines and directed the care and attention which should be given to said Morris by appellant, and appellant fulfilled and carried out the orders and directions of said physicians constantly throughout said period of time; the serious attacks and paroxysms from which said Morris suffered during said time usually occurred in the nighttime, when prompt action and careful attention were necessary; night after night this appellant was required by her duties to be up and attending upon said Morris, sometimes throughout the night, in the administering

of medicines and giving other care and attention to the patient, which his condition and the orders of the physicians made necessary; she performed all the duties required by the physicians in attendance upon said Morris, giving him daily, constant and continuous care and attention from November 19, 1917, up to the hour of his death. She attended upon, doctored and cared for said Morris under the orders and directions of his physicians, for and during the entire period from November 1917, to July 25, 1919, (eighty-seven weeks) and she has never received payment for any of her services so rendered; the fair and reasonable value of such services was $25 per week, there are no set-offs against the same to her knowledge; the total sum now due the appellant from said trustee is $2,175 with interest from July 31, 1919.

The second paragraph of the claim is for the same reason and the same amount and upon the same theory as the first, but in addition thereto, upon the theory that appellee as such trustee had contracted with appellant to render such services and had promised her and agreed that she should be paid out of the trust fund therefor, and also led her to believe that the services she was rendering were covered by the terms of the will, and were to be paid out of the trust fund.

To each paragraph of the complaint appellee filed a demurrer which was sustained. Appellant refused to plead further and judgment was rendered against her on demurrer. This ruling of the court is the only error assigned for our consideration.

The question presented for the decision of this court is as to the meaning of the expression "any doctor bills incurred during the last sickness of my said brother." It is the contention of appellants that the testatrix intended by this expression to include not only the bills for the services of physicians, but as well the expenses

involved in nursing the patient and administering the medicine prescribed for him by the physicians; that the word "doctor" is used as a descriptive adjective and not as a noun. Appellant also contends that if the testatrix had intended to limit the bills to those of physicians only, she would have used the expression "doctor's bills" or "doctors' bills."

It is appellee's contention that the expression above quoted includes only compensation for the services of physicians, and that it cannot be construed to include compensation for the services of those who carry out the orders and directions of the physicians,—the nurses, administering the medicines prescribed for the patient.

It is a general principle upon which the authorities are agreed that the great purpose in construing wills is to ascertain and carry into effect the intention of the testator and that, as said in *Ridgeway* v. *Lanphear* (1885), 99 Ind. 251, 252, "in opposition to these fundamental principles, all technical rules must give way." This fundamental principle is announced in the case of *Downie* v. *Buennagel* (1884), 94 Ind. 228, where it is further held that for the purpose of ascertaining the testator's intention all of the provisions of the will relating to the subject of inquiry must be construed together. Each of the foregoing principles are again announced in the case of *Fenstermaker* v. *Holman* (1902), 158 Ind. 71, 74, 62 N. E. 699. To the same effect are *Taylor* v. *Stephens* (1905), 165 Ind. 200; *Brumfield* v. *Drook* (1885), 101 Ind. 190; *Stimson* v. *Rountree* (1906), 168 Ind. 169, 78 N. E. 331; *Clupper* v. *Clupper* (1904), 163 Ind. 418, 421, 72 N. E. 125; *Hume* v. *McHaffie* (1907), 40 Ind. App. 703, 81 N. E. 117.

Another principle that is helpful in construing cases of ambiguity, is that the court may inquire into the situation and circumstances of the testator, and his fam-

ily, of his property, and his legatees, and the like,
3.   for the purpose of aiding in the construction
     of the will.  *Stevenson* v. *Druley* (1853), 4
Ind. 519; *Jackson* v. *Hoover* (1866), 26 Ind. 511;
*Daugherty* v. *Rogers* (1889), 119 Ind. 254, 20 N. E.
779, 3 L. R. A. 847; *West* v. *Rassman* (1893), 135 Ind.
278, 34 N. E. 991; *Whiteman* v. *Whiteman* (1899), 152
Ind. 263, 274, 53 N. E. 225; *Pate* v. *Bushong* (1903),
161 Ind. 533, 69 N. E. 291, 63 L. R. A. 593, 100 Am. St.
287; *Hoke* v. *Jackman* (1914), 182 Ind. 538, 107 N. E.
65; *McCoy* v. *Houck* (1912), 180 Ind. 634, 640, 99 N.
E. 97; *Robbins* v. *Swain* (1893), 7 Ind. App. 491, 34 N.
E. 670; Elliott, Evidence §§2092, 2097.

We cite this long list of authorities sustaining the
foregoing principle of the right of the court to inquire
into surrounding circumstances for the reason that we
view the surrounding circumstances in this case as of
controlling force in determining the intention of the
testatrix, and the meaning of the ambiguous expression
involved.

The brother of the testatrix for whom she undertook
to provide in her will, was at the time of the execution
     of the will, an unmarried man fifty-three years
4.   of age.  He had not accumulated any property
     and was solely dependent upon his work to sup-
port himself.  He was in failing health.  These facts
were known to the testatrix at the time that she made
her will, and they were known to her thereafter until
the time of her death.  It is apparent from the whole
will, so far as it pertains to this brother, that she in-
tended to care for him in every particular.  She gave
him $75 per month which amount she evidently deter-
mined would be the proper amount for his ordinary
support.  There was no limitation placed upon the man-
ner in which he should use this bequest.  He was at

that time living in her home, and she gave him all of the furniture in his room, and added thereto other pieces of furniture and such bedding as would make his room comfortable, all of which indicates that she intended that during his lifetime he should have every comfort. She then provided that at his death the trustee should pay the funeral expenses, and should see that a proper and specific inscription should be placed upon his tombstone. She further provides in the language of the controverted clause that the trustee should pay "any doctor bills incurred during the last sickness of my brother." It is manifest, from this detail of provision made by the testatrix for her brother, that it was her purpose to care for his every need. She thereby manifested her intention to provide fully for his comfort in his declining years. No one questions but that when she provided for his doctor bills she intended thereby to give him such medical assistance as he needed in sickness. It is the business of the physician to prescribe for his patient such medicines as his diagnosis of the case leads him to think are necessary, but it is not ordinarily the duty of the physician to give these medicines to his patient. This duty is delegated to those in charge of the patient, to whom he gives the specific direction as to the manner in which such medicines are to be used. But if we were to give the phrase in controversy the construction contended for by appellee, there is then no provision for the services of any one to whom this duty may be delegated, and though the physician may prescribe the medicines needed, the patient is left without the benefit thereof because of the fact that no provision has been made for the services of one to administer them. The beneficiary was an unmarried man; he had no home of his own; there was no wife or child to care for him in his sickness. These circumstances made it necessary that the services of some one

be secured for the purpose of caring for him in his helpless condition in his last sickness. It does not appear that there was anyone in the home in which the testatrix left him that was obligated to give him the care that his condition demanded, and that the physicians prescribed. Suppose it had been necessary to remove him to a hospital, can it be contended that the intention of the testatrix would be carried out if the trustee, after agreeing to pay the physicians' bills, would have refused to pay the hospital charges, and the bills for the medicine prescribed, and the bills of the nurses, thereby depriving the beneficiary of the necessary medical treatment, will it be contended that the trustee had fully carried out the intention of the testatrix? Suppose again, that the physician, deeming it necessary that his patient should be removed to a hospital, and be furnished certain medicines, and nurses in attendance to care for the patient and to give him his medicines as prescribed, had himself provided these necessities as a part of his treatment, and had included them in his bill which he presented to the trustee, can it be claimed that such a bill would not have been within the contemplation of the testatrix when she provided that the trustee should pay "any doctor bills?" To ask these questions, it seems to the court, is to answer them in favor of the beneficiary, in the light of the affectionate regard that the testatrix manifested for her brother in the provisions of her will. For the purpose of carrying out the intention of the testatrix we hold that she meant by the expression "any doctor bills" any bills for doctoring, and we adopt the definitions of the word "doctor" as quoted in appellant's brief as follows: "To prescribe or treat medically, as to doctor a sick man, to doctor a cold." (Standard Dictionary.) To the same effect, Funk & Wagnalls New Standard Dictionary. Again, "Treat as a doctor, or physician; to treat medi-

cinally; apply medicines for the cure of; administer medicine or medical treatment." (Century Dictionary.) It was the duty of the claimant under the allegations of her complaint to apply the medicine for the cure of her patient, to administer the medicines that were prescribed by the physician, and she was thereby doctoring her patient, and with this construction of the phrase in controversy, the services that she rendered were clearly included in "any doctor bills." The demurrer to the first paragraph of the claim should have been overruled.

Having reached this conclusion, we deem it unnecessary to discuss the demurrer to the second paragraph of the claim, further than to say that such second paragraph states a cause of action, as against the trust estate, and this is the relief that is prayed.

The judgment is reversed, with instructions to the trial court to overrule the demurrers to the respective paragraphs of the claim, and for further proceedings.