(No. 13121.—Reversed and remanded.)

F. EDWARD SCHMIDT, Appellant, vs. HENRIETTA B. SCHMIDT et al. Appellees.

*Opinion filed February 18, 1920—Rehearing denied April 9, 1920.*

1. WILLS—*devise of income of estate is equivalent to devise of the estate itself.* A devise of all the rents, profits and income of an estate to the testator's wife during her widowhood, and in case of her re-marriage then to her and the testator's children, share and share alike, until her death, creates an estate in the property for the life of the testator's wife.

2. SAME—*will cannot be given effect if testator's intention can not be found therein.* A will cannot be given effect if the intention of the testator cannot be found written in the will, and the court cannot guess the intention which the testator would have expressed if he had expressed his desire.

3. PARTITION—*when the heir may partition estate of testator.* Where a testator creates an estate for the life of his wife and makes no disposition of the remainder after the termination of the life estate, the reversion descends as intestate estate to the heirs as tenants in common, and any of the tenants in common have a legal right to have the estate partitioned.

4. SAME—*devisee under an impossible contingency is not a necessary party.* Every person who in any contingency may be or become entitled to any interest in the premises is a necessary party to a suit for partition, but a contingency created in a will in case of the death of the testator, his wife and all his children, leaving no descendants surviving them, becomes impossible of performance upon the death of the testator leaving his wife and children surviving, and the devisee under such a contingency is not a necessary party to a suit for partition by one of the heirs.

5. SAME—*when partition is not in violation of restriction imposed by will.* If the clause of a will imposing a restriction on partition is void for uncertainty and the property therein described descends as intestate property to the heirs, the restriction against partition has no force and the property may be partitioned. (*Dee v. Dee,* 212 Ill. 338, distinguished.)

6. SAME—*when partition cannot be had during life estate.* Partition cannot be had during the existence of a life estate where the life tenant has a power of sale which she may exercise at any time and thereby defeat the title derived through such partition.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

EDMOND W. POTTLE, for appellant.

HARRIS F. WILLIAMS, (ELDON M. VOTAW, and CORA B. GREEN, of counsel,) for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Florian Charles Schmidt died on December 12, 1908, having executed the following will, dated Chicago, January 14, 1904:

"In the name of our Lord, Amen:

"I, Florian Charles Schmidt, of the city of Chicago, State of Illinois, being now in good health and of sound and disposing mind, and being desirous of making proper disposition of the worldly goods of which I may be possessed, in case of death, do make, publish and declare this to be my last will and testament in manner and form, that is to say:

"I declare that I was lawfully married to Henrietta B. Schmidt, (maiden name Henrietta B. Vahlberg,) with whom I am now living, and that I have three children, Albert, Edward and Karl, now living; that my wife and children have always proven to be faithful and attentive to me and have assisted me in the accumulation of the propetry I now possess.

"No. 1.—I will that my wife be made trustee, guardian of my children and be general custodian of all my estate, giving the required legal bond.

"No. 2.—I will and request that my trustee shall pay all my just debts out of the funds of the estate.

"No. 3.—I will and request that all my life insurance is to go to the funds of my estate, in order that all debts can be paid.

"No. 4.—I will and request that the trust deed or mortgages on my property be all paid off and properly cleared of incumbrance.

"No. 5.—I will and request that the trust deed made by me against all my property, payable to myself, be taken out of the vault (Box 364 Central Safety Deposit Co. vaults in Rookery building) and marked canceled and placed on record of Cook county, Illinois, so as to clear the estate of that trust deed. Have the old Title Guarantee and Trust Company, or its successors, attend that the above, but stay right with it until the same is canceled and recorded.

"No. 6.—I will and bequeath to my wife all my household and kitchen furniture, to have and to hold the same to her separate use.

"No. 7.—I will and request that my trustee shall sell all my interest in the Schmidt Bros. Co. as soon as possible and the proceeds to go to my estate.

"No. 8.—I will and request that my trustee can at any time, if she may see fit, sell at an advantage the following described land: [Here follows a description of four separate tracts.] All the above real estate and property can be sold to the best advantage, as the trustee may see fit.

"No. 9.—I will and request that my real estate known as lot 19, 20 and 21, block eight (8), of Cornell, in Cook county, Illinois, being a sub-div. in section twenty-six (26) and thirty-five (35), township thirty-eight (38), north, range fourteen (14), east of the third principal meridian. This last mentioned No. 9 real estate not to be sold and handled as hereinafter mentioned.

"No. 10.—I will and request that the above and last mentioned property (No. 9) shall be the means and principal of the estate and made clear and free of any incumbrance (debts) and then kept clear of any incumbrance (debts) thereafter and let it be made an incoming property or investment.

"No. 11.—I will and request that after all debts are paid that my trustee shall buy a burial ground costing not less than five hundred nor more than one thousand dollars and have my body placed thereon, and then erect a monument of about the same value as the lot, placed upon the said lot. Burial ground to be selected by my wife within two years after my death. If no suitable ground can be found at the time of death, place my body on a single lot until later, then when suitable place is found take up my body and place same in the right place or lot purchased for that purpose. (Don't be in no hurry; take your time.)

"No. 12.—I will and request that my wife shall receive all rents, profits and all income whatsoever of my estate during her widowhood, to be used for herself, and if she finds fit to assist my three boys, Albert, Edward and Karl Schmidt.

"No. 13.—I will and request in case of my wife's marriage then my oldest son, Albert, shall become trustee. If he cannot qualify then the second son, Edward, and in case he cannot qualify then the third son, Karl, and in case he cannot qualify, some high reputable trust company. Upon re-marriage of my wife the net income shall be divided into share and share alike among my wife and children, my wife taking a child's share. But under no condition shall such second or other husband have any claim on my wife's share or income of my estate.

"No. 14.—I will and request should my wife re-marry and find she has made a failure of her re-marriage at any time and she obtains a legal and lawful divorce from him and will have no further dealing with him whatsoever, she then can claim her full share of the will as article No. 12 of this will calls for.

"No. 15.—I will and request that after the death of myself and my wife and after the youngest child has arrived the age of thirty years old, then the entire estate can be divided in equal shares.

"No. 16.—I will and request that in case of myself, wife and all my children should depart this life (die) leaving no descendants surviving them, the St. Mary's Hospital of Evansville, Indiana, (incorporated,) should be made trustee of my estate and handle my estate as follows:

"1st.—Qualify as trustee, giving the legal bond as the probate court may fix.

"2nd.—Comply with my wish, will and request in the above mentioned articles marked No. 2, 3, 4, 7, 8, 9, 10.

"3rd.—My trustee should secure our bodies, if dead, in whatever country they may be and at whatever expense, bring them to Evansville, Indiana, and there give them a first-class burial from the Trinity Catholic Church, having a requiem high mass, with music and singing (full chorus.)

"4th.—A burial ground to be purchased at the Catholic cemetery at Evansville, Indiana, costing not less than one thousand dollars, and erect a monument thereon costing not less than two thousand dollars, with headstone for each of the dead. Upon this ground our bodies should be entered and funeral service as follows: The graves should be made of a large cement box with cement corner, and while the bodies are being lowered into the grave and first-class band of music of twelve to twenty pieces should play the piece, Nearer My God to Thee, and the casket should be lowered and disappear in a mount of flowers into their resting place forever. If undertaker Joseph Szenanke is still in the business I wish he would take charge of the funeral.

"5th.—My trustee is to give to Adelheide Schmidt, my mother, and Ernestine Vohlberg, my wife's mother, each of them fifty dollars ($50) per month in cash as long as they live and see to their comfort in every way possible.

"6th.—My trustee is to give Elsa Manger, (Elsa Vabley, her maiden name,) my sister-in-law, all my household furniture whatsoever; also the use of my residence as a home for herself and family and for my mother's mother-in-law. But should it be necessary that the residence prop-

erty could be utilized to better advantage, the trustee can make arrangements with her to secure another residence for her of about equal rental value and have her to move them.

"7th.—My trustee shall keep the above in charge for twenty-five years after our death, manage the same in businesslike manner.

"8th.—My trustee should spend at least fifty dollars each to keep our graves in fine condition.

"9th.—This is the most important of all. Should at any time myself, wife or children, or any one of my children, return and make their legal claims and prove the same, then the entire estate is to go back to my said descendants. This is done in case one should be claimed dead, probably in some strange country, or imprisoned from where he or she could not return or be heard from, in this case he or she could claim their estate upon proving their claims. This is also the reason I want this trust in charge to continue twenty-five years, so as to give anyone, myself, wife or children, a good fair chance to come back and make their claim.

"10th.—After twenty-five years have passed and in charge of my trustee, and no one as above stated have made their claim during that time, then the estate is to the above mentioned trustee of St. Mary's Hospital of Evansville, Indiana, (Inc.) to keep and hold for themselves.

"11th.—During the twenty-five years my trustee can use all the net profits what are left after complying with the foregoing mentioned article, but not to use any of the principals."

The testator's wife, Henrietta B. Schmidt, survived him, and his heirs were their three sons named in the will. The will was admitted to probate on January 14, 1909, letters testamentary were issued to the widow and the estate was fully administered.

The first of the tracts of the land described in the will was situated in the State of Arkansas and the third and fourth have been sold since the testator's death. On July

18, 1919, one of the sons, F. Edward Schmidt, filed a bill for the partition of the other two tracts against his mother and brothers, making the various tenants in possession of the property also parties defendant. At the time of filing the bill the complainant was thirty-five years old and his two brothers were thirty-seven and twenty-nine, respectively, and his mother had been in receipt of all the rents and profits of the property involved ever since his father's death.

The defendants demurred generally to the bill, and also assigned as a special cause of demurrer non-joinder as defendants of St. Mary's Hospital of Evansville, Indiana, and the legatees named in paragraph 16 of the will. The court having sustained both the general and special demurrers and dismissed the bill, the complainant appealed.

The appellees contend that the will creates a trust for the lifetime of the widow and postpones the division of the estate until after her death, so that no partition can be made until that time. We regard it as immaterial to determine whether the will created a trust or not during the life of Henrietta B. Schmidt. Disregarding for the present the sixteenth paragraph, the will disposed of the income of the real estate during her life by paragraphs 12, 13 and 14, and this was equivalent to creating an estate for her life in the property. A devise of the rents, income and profits of land is equivalent to a devise of the land itself. (*Mettler* v. *Warner,* 243 Ill. 600; *Zimmer* v. *Sennott,* 134 id. 505.) The remainder was not disposed of. The only direction in the will in regard to it is, that after the death of Henrietta and the arrival of the youngest child at the age of thirty years the estate should be divided into equal shares, without saying into how many shares or who should receive them. It may be surmised from the manner in which his children are mentioned in the will that the testator desired to provide for them, but no such intention is expressed in the language of the will or can be implied

from it. It may be conjectured that his desire was that the estate should be divided into three equal parts, of which each of his children should receive one, but whether he desired that the distribution should be made to those of his children who might be living at the time the youngest child arrived at the age of thirty years, or that the children of any who might have died before that time should represent the parent and take the share which he would have taken if living, or whether it was intended that one of the equal shares should go to each of the children who were living at the testator's death and to his heirs and assigns, is entirely a matter of conjecture. It is consistent with the language of the will that the estate should be divided into two equal parts, one of which should be given to each of two devisees whom the testator had in mind but neglected to name. We may not guess the intention which the testator would have expressed if he had expressed his desire. Unless we can find the intention written in the will we can not give it effect.

Since the will makes no disposition of the remainder of the property after the termination of the estate for the life of Mrs. Schmidt, the reversion descended as intestate estate to the testator's sons as tenants in common, and any of the tenants in common has a legal right to have the estate partitioned. *Miller* v. *Lanning,* 211 Ill. 620; *Miller* v. *Barto,* 247 id. 104.

The appellees contend that the reversion cannot be partitioned because, as they say, of the restriction imposed upon the estate by the testator's will, relying on the case of *Dee* v. *Dee,* 212 Ill. 338, which holds that equity will not award partition at the suit of one in violation of his own agreement or in violation of a condition or restriction imposed upon the estate by one through whom he claims. The estate of the appellant is not, however, affected by the will, for the appellant does not take it through the will but inherits it as intestate property. It is, therefore, not re-

stricted by any provision of the will. The reversion in that part of the property described in paragraph 9 is subject to partition but the property described in paragraph 8 is not, because the title is subject to be defeated by the exercise by the life tenant of her power of sale.

Coming to the consideration of paragraph 16, the appellees insist that St. Mary's Hospital of Evansville, Indiana, and the legatees named in that paragraph, were necessary parties defendant. Every person who in any contingency may be or become entitled to any beneficial interest in the premises is a necessary party to a suit for partition, and the inquiry therefore is whether any interest has been or may be acquired under paragraph 16. It is impossible that it shall ever become effective, because its operation depends upon the death of the testator, his wife and all his children leaving no descendants surviving them, and the condition is impossible so far as the testator is concerned, for he has already died leaving descendants.

The appellees seek to have applied the rule that where there is a devise over, dependent upon the death of the first taker under circumstances which may or may not occur, the devise refers to the death of the first taker either before or after the death of the testator. The rule has no application here, for the circumstances are such as indicate the occurrence of the condition at the time of the death of the testator. There is no devise over after the death of the first taker. There is no first taker. Paragraph 16 merely provides a disposition of the property in substitution of that made by the first fifteen paragraphs, which is to take effect in case the condition mentioned in paragraph 16 exists at the death of the testator. In such event the paragraph provides that St. Mary's Hospital shall qualify as trustee and shall comply with the provisions of the will as specified in the preceding paragraphs of the will, except paragraphs 11 to 15, which are dependent upon the survival of the testator's wife and children, and shall carry

out the additional provisions mentioned in paragraph 16. The language refers to a situation which must necessarily arise at the testator's death, and there are no circumstances to require that it shall receive any other than its natural construction.

Since the appellant was entitled, under the allegations of the bill, to partition of the property described in paragraph 9 of the will, the demurrer should have been overruled, and the decree will be reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*