No. 34,397

H. W. KIMBERLIN, *Appellant*, v. ROBERT C. HICKS et al., *Appellees*.

(94 P. 2d 335)

450

Opinion filed October 7, 1939.

*Aubrey Neale,* of Coffeyville, *O. L. O'Brien* and *Walter L. McVey,* both of Independence, for the appellant.

*Charles D. Welch,* of Coffeyville, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This was an action in partition. A demurrer to plaintiff's amended petition was sustained, and plaintiff appeals.

Plaintiff and defendants claim under the will of Charles M. Hicks, who died October 3, 1920. The will provided:

"First: For services rendered me during my lifetime, I give and bequeath to L. C. Ele, for a period of twenty years from the date of my death, the use, rent free, of the following-described real estate (description), L. C. Ele to receive all rentals and royalties which may accrue on account of the production of oil and gas, and shall pay all taxes assessed against the above-described real estate.

"Second: To my brother, George W. Hicks, I give and bequeath five thousand dollars ($5,000), which amount shall be invested by my executor, and the increase therefrom shall be paid to George W. Hicks.

"Third: To my nephew, Dow Jones, I give and bequeath five dollars.

"Fourth: To the sons and daughters of my brother, William Harrison Hicks, and Dow Hicks, and my sister Sarah Hickman, I give and bequeath the remainder of my real and personal property, also at the end of twenty years after my death, the real estate above described, also the five thousand dollars given to my brother, at his death."

On August 12, 1938, L. C. Ele by quitclaim deed conveyed "the balance of the twenty-year period in and to the life estate which I own in and to" the land in question to the defendant O. E. Ele. L. C. Ele died September 13, 1938.

Plaintiff alleges that he is the owner of an undivided 77/108 interest in the real estate by virtue of deeds made to him by the "legatees of Charles M. Hicks, deceased"; that plaintiff and certain of the defendants, remaindermen under the will, are entitled to the immediate possession of the land, and ask for partition.

Plaintiff contends that under the will of Charles M. Hicks, the devisee L. C. Ele acquired a right of personal use and occupancy only in the premises; that whatever the nature and extent of his interest it was forfeited by his failure to pay the taxes, by waste

committed, by abandonment, and in any event that it was terminated by his death. These theories, urged with sincerity in an elaborate brief, must be examined.

1. What interest or estate did L. C. Ele take under the will?

A motive for giving a substantial interest in the property to this devisee is disclosed in the declaration: "For services rendered me in my lifetime." The first paragraph specifies "a period of twenty years from the date of my death," and the fourth definitely states the gift to the remaindermen is not to arise until "the end of twenty years after my death." Beyond dispute this language is apt and appropriate to create a term of twenty years in Ele. It is contended, however, that the words "the use, rent free" degrades the estate for years to a right of personal use and occupancy only. We are unable to agree with this contention. As the devisee was to have the use of the land for twenty years without paying rent, necessarily he was to have the avails—the rents, issues and profits of the land for the term. It has been settled since the time of Lord Coke that a grant or devise of the rents, issues and profits of land passes the land itself.

In *Caldwell v. Fulton*, 31 Pa. St. 475, 484, 72 Am. Dec. 760, it was said:

"There are two modes in which the subject matter of a deed may be described, both equally potential. The one is by a description of the thing itself, as of land by metes and bounds, or by a known name, and the other is by a designation of its usufruct, or of the dominion over it. Thus a grant of the rents, issues, and profits of a tract of land is uniformally held to be a grant of the land itself: Co. Litt. 4 b. Judgments abound to this effect in regard to devises, and though in wills and deeds the rules of construction differ relative to words limiting the estate granted, yet they are the same of words describing the subject matter of the grant. . . . The reason is that the grant of a thing can be no more than the grant of the full and unlimited use of it. . . ."

In *Beilstein v. Beilstein*, 194 Pa. St. 152, 154, 45 Atl. 73, 75 Am. St. R. 692, it was said:

"The gift of the income is the gift of the land itself: *Drusadow v. Wilde*, 63 Pa. 170; *Curry v. Patterson*, 183 Pa. 238. In the former case it is said by Sharswood, J.: 'There is no construction of words older and better settled than that a grant or devise of the profits of land passes the land itself, "for what," says Lord Coke, "is the land but the profits thereof, for thereby vesture, herbage, trees, mines and all whatever parcel of the land doth pass." Co. Litt. 4, 6.'"

In *Lachmund v. Moore,* 192 Ia. 980, 981, 181 N. W. 4, it was said:

"It will be noted that the will in terms gave to Harriet M. Moore, without any limitations, all the rents and profits of the real estate in question. In the absence of some provision of the will indicating·the contrary intent, such a disposition of the rents and profits carries with it the *corpus* of the estate. There is no conflict of authority upon this proposition. The trial court based its decree upon it, and awarded the property to the defendant Harriet. . . ."

See, also, *Schnack v. City of Larned,* 106 Kan. 177, 180, 186 Pac. 1012; *Johnson v. Muller,* 149 Kan. 128, 86 P. 2d 569; *Estate of Franck,* 190 Cal. 28, 210 Pac. 417; *Schmidt v. Schmidt,* 292 Ill. 275, 126 N. E. 736; *McCoy v. Houck,* 180 Ind. 634, 99 N. E. 97.

An estate for years is an estate, the duration of which is fixed in units of a year or multiples or divisions thereof, and we are clear that L. C. Ele received such an estate in the land devised. His interest therein was alienable. Conveyances of land or of any estate or interest therein may be made by deed properly executed. (G. S. 1935, 67-205.) Under our statute of frauds, 33-105, any estate or interest in land, exceeding one year in duration, may be assigned by deed. Under the law of this state any interest in land is subject to voluntary (*Markham v. Waterman,* 105 Kan. 93, 98, 181 Pac. 621) and involuntary (*Thompson v. Zurich State Bank,* 124 Kan. 425, 260 Pac. 658) alienation. The quit-claim deed from L. C. Ele to O. E. Ele effectually conveyed the unexpired portion of the twenty-year term.

2. Appellant invokes *Sherman v. Critzer,* 135 Kan. 579, 11 P. 2d 993, quotes at length from that case, and asserts that the doctrine there announced requires a reversal in this case. In the Critzer case the testator devised land to his wife for a period of ten years, then to pass to and become the property of his wife and three children in equal shares, and if any child should die before the end of the ten-year period, the share of such child to go to his or her children, if any; if none, to his or her surviving brother and sister. The wife died two weeks before the testator. The court held the remainders were accelerated into possessory estates.

It is contended that upon the death of L. C. Ele the remainders were accelerated as in the Critzer case. The argument, as stated in the brief of appellant, runs thus: "If, in the Critzer case, the wife of the testator had lived three weeks longer, which would have been one week after the death of the testator, would not the

same argument and rule have been applied—that is, that there was no one who for the balance of the ten-year period would have the use and benefit of the property, and that the remaindermen would be immediately entitled to possession."

Passing for the moment the point that the death of the tenant does not terminate a term of years, there is slight analogy between the Critzer case and the case at bar. This will clearly appear by contrasting the real question there raised with the question now before us.

Whenever prior and succeeding interests in property are created there is a possibility that one or more of the interests may fail to come into existence. An attempted prior interest—as a life estate, or a term of years—may fail either by renunciation or by the death of the devisee before the testator. Cases where a widow renounces a life estate devised to her, and elects to take under the statute, are common. (*Allen v. Hannum*, 15 Kan. 625; *Fennell v. Fennell*, 80 Kan. 730, 106 Pac. 1038; *Pittman v. Pittman*, 81 Kan. 643, 107 Pac. 235.) In *Miller v. Miller*, 91 Kan. 1, 136 Pac. 953, the renunciation was by a life tenant, a grantee under a deed. (See Restatement, Property, sections 231 to 235.) In the case of the widow's renunciation, that event, for the purpose of construction, is regarded as relating back to the death of the testator, or the delivery of the deed, and the instrument is reconstrued in the light of that fact. (Simes, Future Interests, § 752.) Thus by construction the interest renounced never came into existence.

Likewise where the devisee dies before the testator, the gift fails. In the Critzer case the term of ten years attempted to be created in the widow failed by the death of the widow in the lifetime of the testator. Hence the remainders limited after extinct life estate, not being subject to a condition precedent (compare *Miller v. Miller*, supra), were advanced and became possessory estates.

In the case before us there was no failure of the twenty-year term by renunciation or death of the tenant before the testator; on the contrary, the twenty-year term vested in Ele and he took possession thereof. Being an estate validly created, it could be terminated only in manner provided by law. An estate for years is a valuable property interest, and unless restricted by the terms of the creating instrument, it may be transferred or devised. It was not terminated by the death of Ele. The doctrine of the Critzer case has no application to the question here presented.

3. It is claimed, however, the term was forfeited by failure to pay the taxes. Under the will the duty to pay the taxes during the term was imposed on the tenant Ele.

Where a term of years is created under a lease, payment of taxes is usually provided for in the covenants in the lease (see 35 C. J. 1068), but where the term is created in a will, the duty to pay the taxes in the absence of a provision otherwise controlling would seem to be analogous to the duty of a life tenant to pay taxes. (*Jinkiaway v. Ford*, 93 Kan. 797, 145 Pac. 885.) Many remedies are available to the owners of the succeeding interest, a receivership, or such interest could be impressed with a lien. (Restatement, Property, § 129, *comment k*.)

As there was no special limitation in the will terminating the term on failure to pay the taxes, and no provision that would divest the estate of Ele in favor of any other person, it follows that his interest was not terminated or divested upon his failure to pay the taxes. Neither was there a condition subsequent giving the heirs of the testator power to terminate his estate. (*Ritchie v. K. N. & D. Rly. Co.*, 55 Kan. 36, 39 Pac. 718.)

4. It was alleged that Ele abandoned his right to use the real estate on or about August, 1937, and moved to a town; that he made application for old-age assistance, in which he stated that he did not own, and had no interest in, any real estate. It is argued that his interest in the real estate was extinguished by abandonment and that the interest of the remaindermen was accelerated.

In 1 C. J. S., page 4, abandonment is defined: " 'Abandonment' of property or a right is the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his ownership, possession, and control, and without vesting ownership in any other person."

A title in fee simple cannot be lost by mere abandonment (*Barrett v. Coal Co.*, 70 Kan. 649, 79 Pac. 150), and abandonment is not usually mentioned as a method by which a life estate may be extinguished. (Restatement, Property, section 152; 21 C. J. 969.) In *Spencer v. Smith*, 74 Kan. 142, 145, 85 Pac. 573, it is stated that as a general rule title to land cannot be lost by abandonment.

Surrender was a recognized mode of conveyance at common law. In 2 Tiffany on Real Property, page 1578, it is stated:

" 'Surrender' has been defined as a yielding up of an estate for life or years to him that hath an immediate estate in reversion or remainder, wherein the estate for life or years may drown by mutual agreement between them. Un-

fortunately, this technical meaning of the word, as referring to the transfer of an estate, has been somewhat obscured by its frequent use in an untechnical sense, as referring to the relinquishment or yielding up, not of an estate, but of the physical possession of the premises, as when the lessee covenants to 'surrender' the premises in good condition at the end of the term, and the courts frequently fail clearly to distinguish between such a surrender of possession and a surrender, properly so called, of an estate for life or years."

One mode of surrender—by operation of law—occurs where the tenant relinquishes possession, and possession is resumed by the reversioner, the landlord. The theory of such surrender is that the revesting of possession in the landlord to the exclusion of the tenant is inconsistent with the continuance of the outstanding leasehold. (2 Tiffany, Real Property, 1583.) Assuming the doctrine of surrender by operation of law could be applied to a term created under a will, it could have no application to facts alleged in the petition. The remaindermen never took possession of the premises; on the contrary, it is alleged that possession has been held by Ele and those claiming under him. A mere declaration by Ele to third parties that he owned no real estate would not forfeit his estate or extinguish his title, and no question of estoppel is raised.

That certain interests in land—for example, an easement—may be lost by abandonment is well settled. All we determine is that under the facts alleged the term of years here in dispute was not extinguished by abandonment.

5. It was alleged in the petition that Ele had permitted the improvements on the premises, which were of considerable value, to deteriorate until at the time when he vacated the premises the improvements were practically worthless, and that he cut "a number of large oak trees and other trees growing around a pond used for watering cattle." It was further alleged that any interest Ele had in the premises "terminated when he abandoned the property, failed to pay the taxes on the same, and permitted waste to be committed thereon."

Usually the owner of an estate for years is the tenant of a landlord who owns the reversion and to whom a stipulated rent is payable. In such case the protection accorded to the landlord for injuries to the inheritance by the tenant is governed by the law of landlord and tenant. We are confronted with a term of years created by a will where the owner of the term is exonerated from any obligation to pay rent. Ordinarily a life tenant holds his estate rent free. The protection afforded the remaindermen in the instant case

as regards waste would appear to be analogous to the protection afforded remaindermen after a life estate. Adjudications on the point are scanty. (See Restatement, Property, Scope Note to ch. 13.)

By statute in some states multiple damages for waste may· be imposed on a tenant for life or years, and in some a forfeiture is imposed. (Simes, Future Interests, §§ 620, 621.) We have no statute permitting the forfeiture of a life estate or a term of years for waste.

Our statute G. S. 1935, 67-523, provides that a person who has an estate in remainder or reversion may maintain an action for waste for injury to the inheritance, notwithstanding an intervening estate for life or years. It was an established principle of the common law that the person complaining of waste must have an immediate inheritance without an intermediate estate of freehold. Hence, where there was a limitation to A for life, remainder to B for life, remainder to C in fee, no action for waste could be maintained by C during the continuance of B's intervening estate. The evident purpose of this statute was to change the ancient feudal rule. It has no significance here except that it is a statutory recognition of the protection accorded the remaindermen for waste.

The remedies available to the owner of an indefeasibly vested reversion or remainder in fee against the possessory life tenant who commits waste are numerous. He may recover compensatory damages for the injuries sustained. He may have injunctive relief in equity, or in a proper case may ask for a receivership. (Simes, Future Interests, § 616.) It would seem the same remedies are available against a tenant for years who holds under a will without duty to pay rent.

Plaintiff argues the remainders are indefeasibly vested. Assuming that this contention is well founded, the remedies available are ample, but the drastic penalty for forfeiture, in the absence of a statute, is not permitted by the common law.

In what has been said we have assumed the parsimonious allegations in the petition were sufficient to raise a question as to permissive and voluntary waste.

6. As stated, plaintiff contends the remainders were indefeasibly vested. The fourth clause provided that at the end of twenty years after the death of the testator, the real estate described was to go "to the sons and daughters of my brother, William Harrison Hicks, and Dow Hicks, and my sister, Sarah Hickman."

The petition alleges that the probate court found that certain persons, eighteen in number, were the "owners of the remainder of this property." It is not alleged that the persons named in the probate proceedings were the children of William and Dow Hicks and Sarah Hickman mentioned in the fourth clause of the will. It does not appear in the petition whether the ancestors mentioned in the will are living or dead, and, if dead, whether they were dead at the date of the will.

A gift to the "sons and daughters" of a person is equivalent to a gift to the "children" of such person. The gift to the children of William Harrison Hicks was a class gift. If William was dead at the date of the will, leaving, for example, five children, it is evident membership in the class could not increase. It could, however, decrease before the death of the testator. If two of the supposed group of five children died before the testator, the three surviving would take. Therefore, the children of William living at the death of the testator would constitute the class entitled to take. (Simes, Future Interests, § 366.) But, if William is now living, the class could increase by the birth of other children before the date of distribution—the end of the twenty-year period. There is authority for the view that the class would then close and any children of William born after the end of the twenty-year term would be excluded. (Simes, Future Interests, § 380.)

The limitation of the remainder in the fourth clause was to "the sons and daughters of my brother, William Harrison Hicks, and Dow Hicks, and my sister, Sarah Hickman." The word brother is in the singular number. Was the gift to the children of William as a class, and to Dow and Sarah as individuals? If so, did the children of William take one-third of the remainder as a class, with one-third to Dow and one-third to Sarah, as individuals?

Or did the testator consider the children of William together with Dow and Sarah as constituting the members of one class? If so, then if William had predeceased the testator and at the death of the testator had three children, such children with Dow and Sarah would constitute a class of five, which would be vested.

It could be argued, however, that the remainder was to all the children of the three persons named, William, Dow and Sarah, as constituting one class. If such persons were all dead at the date of the will, their children alive at the death of the testator would take. If William, Dow and Sarah are now living, any children born to

them before the end of the twenty-year term—the period of distribution—would become members of the class. It is therefore clear that whether the remainder to such children is indefeasibly vested, or vested liable to open and admit children born before the date of distribution, depends on facts not disclosed by the petition.

Plaintiff has predicated his right to partition on the theory that the interest acquired by Ele was not an estate for years, but a mere right of use and occupancy; that whatever interest he acquired was either extinguished by his death or forfeited by failure to pay taxes, by abandonment, and by voluntary and permissive waste; that the remainder interests were indefeasibly vested, and that the interest of plaintiff as transferee of such remaindermen was accelerated, giving him the right of possession.

From our examination of the various points raised we are clear these claims are not well founded. It follows that the judgment of the trial court must be affirmed. It is so ordered.